KING, Circuit Judge:
 

 Carrollton-Farmers Branch Independent School District and the City of Farmers Branch (collectively, the “Taxing Units”) appeal from an order of the district court affirming the bankruptcy court’s determination that the automatic stay of 11 U.S.C. § 362 barred the Taxing Units from obtaining tax liens for post-petition ad valorem property taxes for the years 1987 and 1988 on property currently owned by Martha Jo Pointer. The Taxing Units also appeal the lower courts’ determinations that they are not entitled to post-petition penalties, fees, and costs for unpaid 1985 and 1986 ad valorem property taxes secured by valid liens.
 

 The principal question presented for our review, and one extensively briefed by the parties and amici curiae, is whether Texas ad valorem tax liens, which arise by operation of law,
 
 [1]
 
 violate the automatic stay when they attach, post-petition, to property of a bankruptcy estate. This is an issue that has divided the circuits,
 
 compare In re Parr Meadows Racing Ass’n,
 
 880 F.2d 1540, 1546 (2d Cir.1989) (property tax liens arising post-petition by operation of law violate stay),
 
 cert. denied,
 
 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990),
 
 and Equibank, N.A. v. Wheeling-Pittsburg Steel Corp.,
 
 884 F.2d 80, 84 (3d Cir.1989) (same),
 
 with Maryland Nat’l Bank v. Mayor of Baltimore,
 
 723 F.2d 1138, 1142-43 (4th Cir.1983) (property tax liens arising post-petition by operation of law do not violate stay).
 
 [2]
 
 We are unable to address this issue here, however, because we hold that Pointer lacked standing under the Bankruptcy Code to avoid the post-petition tax liens as violative of the stay. We are
 
 *84
 
 therefore compelled to reverse the judgment below as to that issue. As to the Taxing Units’ claim for post-petition penalties, fees, and costs for unpaid taxes secured by the valid, pre-petition liens, we affirm the judgment of the district court.
 

 I. FACTS AND PROCEDURAL HISTORY
 

 The facts in this case are stipulated. Gerald Pointer built an apartment complex in Farmers Branch, Texas. He owned the complex, which he called the “Valwood Village Apartments,” until 1977, when he sold the complex. As partial consideration for the sale, Gerald Pointer accepted a promissory note secured by a deed of trust that granted him a lien on the apartment complex. In 1982, Gerald Pointer divorced his wife, Martha Jo Pointer. In the divorce decree, Martha Jo Pointer (“Pointer”) was awarded the promissory note and the deed of trust on the Valwood Village Apartments.
 

 During the early 1980s, ownership of the Valwood Village Apartments frequently changed hands. All transfers of the property, however, remained subject to the lien that Pointer held on the property. In 1986, Valwood Village Apartments, Ltd. (“WAL”) owned the apartment complex. WAL was forced into involuntary bankruptcy on April 25, 1986. Its bankruptcy case is currently pending in the Northern District of Texas.
 

 On November 16, 1987, Pointer herself filed a petition for relief under chapter 11 of the United States Bankruptcy Code. Three months later, Pointer filed a motion for relief from the automatic stay in the WAL bankruptcy proceedings. On June 9, 1988, the bankruptcy court presiding over the WAL bankruptcy lifted the automatic stay to permit Pointer to foreclose her lien on the Valwood Village Apartments. Pointer conducted a foreclosure sale of the property where she was the high bidder, and consequently purchased the apartment complex.
 

 The Taxing Units filed a proof of claim against the Pointer estate seeking,
 
 inter alia,
 
 payment of the taxes allegedly secured by the liens at issue, and penalties, fees, and costs attributable to the unpaid taxes. On January 16, 1990, Pointer filed an adversary proceeding to determine the extent and validity of the ad valorem tax liens claimed by the Taxing Units for the years 1987 and 1988. Pointer argued that § 362(a)(4) of the Bankruptcy Code prohibited the Taxing Units from taking any action to create or perfect any tax liens against the apartment complex after April 25, 1986, the date on which the involuntary petition against WAL was filed.
 
 [3]
 
 The bankruptcy court agreed, 113 B.R. 285, ruling that the Taxing Units held valid tax liens against the Valwood Village Apartments to secure ad valorem property taxes for the pre-petition year of 1985 and for 1986, the year in which the WAL bankruptcy was filed, but that they did not hold valid tax liens for the post-petition years of 1987 and 1988. Pointer’s complaint also alleged that the Taxing Units’ liens for 1985 and 1986, the validity of which she does not contest, do not secure the payment of post-petition penalties, fees, or costs. The bankruptcy court again agreed, ruling that the valid 1985 and 1986 tax liens did not secure the payment of penalties, fees, and costs for Pointer’s non-payment of the 1985 and 1986 taxes. The district court affirmed in all respects the judgment of the bankruptcy court.
 

 On appeal, the Taxing Units contend that the automatic stay should not prevent them from obtaining tax lien status for post-petition 1987 and 1988 taxes. The Taxing
 
 *85
 
 Units also contend that they are entitled to penalties, fees, and costs on the unpaid ad valorem taxes secured by valid liens for the pre-petition years 1985 and 1986.
 

 II. VALIDITY OF POST-PETITION LIENS
 

 Pointer contends that the post-petition ad valorem tax liens on the apartment complex are invalid because their attachment violated the automatic stay of 11 U.S.C. § 362. The issue of whether Pointer, as a creditor of the VVAL estate, has standing to seek avoidance of the tax liens as viola-tive of the WAL automatic stay is a threshold issue, and one of first impression in this circuit.
 

 The question of whether a creditor has standing to seek relief for an alleged violation of the automatic stay by another creditor requires two separate inquiries. The first is whether the creditor has standing under the Constitution and certain prudential concepts that have developed to limit constitutional standing. The second is whether the creditor has standing under the Bankruptcy Code. We address these inquiries in turn.
 

 A.
 
 Constitutional and Prudential Standing
 

 The Supreme Court in
 
 Warth v. Seldin,
 
 422 U.S. 490, 498-99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), stated that a plaintiffs standing depends on “whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant
 
 his
 
 invocation of federal court jurisdiction and to justify exercise of the court’s remedial powers on his behalf.” The test for standing includes elements mandated by Article III as well as non-constitutional prudential considerations. 6A James W. Moore & Jo Desha Lucas,
 
 Moore’s Federal Practice
 
 If 57.11, at 57-93 (2d ed. 1991). The Court summarized these elements in
 
 Gladstone Realtors v. Village of Bellwood:
 

 The constitutional limits on standing eliminate claims in which the plaintiff has failed to make out a case or controversy between himself and the defendant. In order to satisfy Art. Ill, the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. Otherwise, the exercise of federal jurisdiction “would be gratuitous and thus inconsistent with the Art. Ill limitation.”
 

 Even when a case falls within these constitutional boundaries, a plaintiff may still lack standing under the prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim....
 

 Congress may, by legislation, expand standing to the full extent permitted by Art. Ill, thus permitting litigation by one “who otherwise would be barred by prudential standing rules.” In no event, however, may Congress abrogate the Art. Ill minima: A plaintiff must always have suffered “a distinct and palpable injury to himself,” that is likely to be redressed if the requested relief is granted.
 

 441 U.S. 91, 99-100, 99 S.Ct. 1601, 1607-08, 60 L.Ed.2d 66 (1979) (footnotes and citations omitted). In order to assert constitutional standing, a plaintiff must therefore allege (1) a personal injury (2) fairly traceable to the defendant’s allegedly unlawful conduct, which is (3) likely to be redressed by the requested relief.
 
 Allen v. Wright,
 
 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)).
 

 Pointer can certainly show here that she has suffered palpable injury, which was caused by the Taxing Units’ alleged stay violations. If the actions by the Taxing Units to create and perfect the ad valo-rem tax liens are deemed valid, Pointer’s property may well be seized to satisfy WAL’s delinquent taxes. Finally, the bankruptcy court can redress her “injury” by voiding the tax liens as violative of the stay. We find that Pointer’s assertion of standing does not offend Article Ill’s minimum requirements or any prudential con
 
 *86
 
 siderations that might limit her ability to bring suit.
 

 B.
 
 Statutory Standing
 

 Having found that the assertion of standing by Pointer passes constitutional muster, we now must determine whether Pointer has statutory standing under the Bankruptcy Code to seek relief for an alleged stay violation by another creditor. The particular type of stay violation with which we are concerned in this case is an act against property of the debtor’s estate. The Taxing Units assert that they have liens arising under Texas law against property of the WAL estate, specifically the Valwood Village Apartments, which secure the payment of post-petition 1987 and 1988 ad valorem taxes. Pointer relies, in response, on § 362 of the Bankruptcy Code which provides, in pertinent part, as follows:
 

 (a) ... [The filing of a bankruptcy] petition ... operates as a stay, applicable to all entities, of—
 

 [[Image here]]
 

 (4) any act to create, perfect, or enforce any lien against property of the estate[.]
 

 11 U.S.C. § 362. Pointer contends that the words “any act” include the attachment of tax liens that arise by operation of law.
 

 We turn to two sections in the Bankruptcy Code which address the question of standing to bring suit for violations of the automatic stay. The first section need not long concern us because it authorizes suits to obtain a form of relief different from that sought by Pointer. Specifically, § 362(h), which was added to the Bankruptcy Code in 1984, provides that “[a]n individual injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including costs and attorneys’ fees, and, in appropriate circumstances, may recover punitive damages.”
 

 This court has addressed § 362(h) in the context of a suit by the debtor. In
 
 Pettitt v. Baker,
 
 876 F.2d 456 (5th Cir.1989), we held that § 362(h) creates a private right of action for one (there, the debtor) injured by a willful violation of the stay.
 
 Id.
 
 at 457 (creditors willfully violated stay by filing several pleadings in state court following the filing of the debtor’s bankruptcy petition). The instant case does not require us to decide whether the private right of action in § 362(h) extends to creditors as well. We note that the District Court for the Western District of Louisiana has determined that § 362(h) does provide for a right of action by a creditor. In
 
 Homer National Bank v. Namie,
 
 96 B.R. 652 (W.D.La.1989), Chief Judge Stagg held that § 362(h), on its face, allows creditors to assert stay violations. According to the court, “[i]f Congress intended to limit the remedies of § 362(h) to debtors it could have done so by the simple expedient of replacing the term ‘individual’ with ‘debt- or’ _ Moreover, it seems illogical to conclude that Congress intended to limit § 362(h) to debtors when one of the principal purposes behind the automatic stay is to protect creditors from unequal treatment.”
 
 Id.
 
 at 655;
 
 see also In re Prairie Trunk Ry.,
 
 112 B.R. 924, 930 (Bankr.N.D.Ill.1990).
 
 [4]
 

 Pointer, however, seeks a different form of relief from that authorized by § 362(h). Rather than seeking damages, Pointer seeks instead to invalidate the Taxing Units’ post-petition liens as violative of the stay. The Code specifically addresses standing to enforce this type of alleged stay violation — unauthorized post-petition
 
 *87
 
 transfers of property — in § 549.
 
 [5]
 
 That section reads, in pertinent part, as follows:
 

 (a) Except as provided in subsection (b) or (c) of this title, the trustee may avoid a transfer of property of the estate—
 

 (1) that occurs after the commencement of the case; and
 

 [[Image here]]
 

 (2)(B) that is not authorized under this title or by the court.
 

 11 U.S.C. § 549.
 
 [6]
 
 Attachment of a lien on property of the estate is clearly a “transfer” of property. 11 U.S.C. § 101(50) (“ ‘transfer’ means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor’s equity of redemption”).
 
 [7]
 

 The gravamen of Pointer’s complaint is that the attachment of ad valorem tax liens under Texas law for 1987 and 1988 constituted a transfer of VYAL estate property which occurred after commencement of the WAL case and without authorization under the Bankruptcy Code or by the WAL bankruptcy court. As such, Pointer is faced with the fact that § 549 is an avoidance power belonging solely to the trustee
 
 [8]
 
 or debtor-in-possession.
 
 [9]
 
 In general, as well as under § 549, only trustees and debtors-in-possession,
 
 not
 
 creditors, have standing to invoke avoidance powers. In
 
 In re Ciavarella,
 
 28 B.R. 823, 825 (Bankr.S.D.N.Y.1983), the bankruptcy court, in the context of a chapter 13 case, noted that the plain language of the Code mandates that only a trustee, not a creditor, is authorized to exercise the avoidance powers of §§ 547(b) and 549(a). The court reasoned that “[i]f creditors ... who received prefer
 
 *88
 
 ential or avoidable transfers were answerable to the other creditors in the case, so that ... creditors might shoot it out against each other while the ... debtor stood by passively without having a choice in the matter, the net result would be the demise of the ... case.”
 
 Id.; see Nebraska State Bank v. Jones,
 
 846 F.2d 477, 478 (8th Cir.1988) (single creditor cannot bring action to avoid fraudulent conveyance);
 
 Delgado Oil Co., Inc. v. Torres,
 
 785 F.2d 857, 860 (10th Cir.1986) (only a trustee can maintain post-bankruptcy action to avoid preference);
 
 In re Bacher,
 
 47 B.R. 825, 829 (Bankr.E.D.Pa.1985) (only trustee has standing to utilize § 548, not creditor);
 
 In re Van Brock,
 
 33 B.R. 546 (Bankr.S.D.Fla.1983) (cause of action under § 548 can only be asserted by trustee or debtor-in-possession, not creditor);
 
 see also In re Mortgage-America Corp.,
 
 714 F.2d 1266, 1275-76 (5th Cir.1983) (“A trustee acting under section 544 acts as a representative of creditors, and any property recovered is returned to the estate for the eventual benefit of
 
 all
 
 creditors.... Actions for the recovery of the debtor’s property by individual creditors under state fraudulent conveyance laws would interfere with th[e] estate and with the equitable distribution scheme_”) (citations omitted). We agree with the reasoning of
 
 In re Ciavarel-la,
 
 and find that the plain language of § 549 restricts its use to trustees or debtors-in-possession. With regard to the WAL estate, Pointer is neither, and therefore lacks standing to bring this action insofar as it seeks to avoid the 1987 and 1988 ad valorem tax liens.
 

 If, despite the absence of any apparent statutory authorization, we were to hold that Pointer could bring an action to avoid the Taxing Units’ liens, we would be presented with a further anomaly. Section 549(d) provides a two-year limitations period for the avoidance by the trustee or the debtor-in-possession of a transfer under subsection (a). According to subsection (d),
 

 (d) An action or proceeding under this section may not be commenced after the earlier of—
 

 (1) two years after the date of the transfer sought to be avoided; or
 

 (2) the time the case is closed or dismissed.
 

 11 U.S.C. § 549(d). This provision establishes a time-frame in which the trustee must act if he is to utilize § 549(a). It would make little sense to impose a deadline on the trustee to avoid a transfer, but nevertheless to permit a creditor to exercise the avoidance power without such a limitation. In this very case, a question exists whether Pointer’s complaint, had it been filed by the trustee, would have been timely.
 

 Our conclusion does not mean that a creditor whose lien on property of the debt- or is clearly diminished by the attachment of a statutory lien has no recourse. A creditor may bring an avoidance action under § 549, but only after moving the bankruptcy court for authorization to act on behalf of the trustee or debtor-in-possession. As explained in
 
 In re V. Savino Oil & Heating Co.,
 

 [a]s a rule, individual creditors ... lack the authority to institute avoidance actions. As indicated, such actions must be instituted by a trustee, debtor-in-possession or, with court approval, by a creditors’ committee upon demonstrating that the trustee or debtor-in-possession unjustifiably declines to sue. This is not to suggest that a bankruptcy court can never authorize an avoidance action on behalf of the estate by an individual creditor in a Chapter 11 case. Fair and orderly bankruptcy administration, however, would dictate that such authority might be granted upon showings of particularly extraordinary circumstances.
 

 91 B.R. 655, 656-57 (Bankr.E.D.N.Y.1988);
 
 see In re Munoz,
 
 111 B.R. 928, 931 (D.Colo.1990) (for a creditor to assert an avoidance power, “courts have found it imperative that the creditor first seek approval from the bankruptcy court”);
 
 In re Curry & Sorensen, Inc.,
 
 57 B.R. 824, 828 (9th Cir. BAP 1986) (creditors lacked standing to bring avoidance action without prior court approval);
 
 In re Toledo Equip.,
 
 35 B.R. 315, 320 (Bankr.N.D.Ohio 1983) (creditors committee must first make appropriate showing that debtor-in-possession has un
 
 *89
 
 justifiably failed to prosecute preference action before commencing action itself);
 
 see also In re Chernicky Coal Co., Inc.,
 
 67 B.R. 828, 832 (Bankr.W.D.Pa.1986) (holding that creditor who did not seek authorization from bankruptcy court could nevertheless assert claim under § 549 in chapter 11 case because appropriate circumstances were shown—i.e., there was no trustee to file the claim, the debtor had no reason to file a claim, and the successful avoidance of the transfer would have increased the debtor’s liability). We therefore do not foreclose the possibility that a creditor, such as Pointer, may maintain an action on behalf of the trustee or debtor-in-possession to avoid a post-petition lien after seeking authorization from the court and a showing of appropriate circumstances.
 

 In the instant case, however, Pointer has not sought authorization from the WAL bankruptcy court to act on behalf of the VYAL trustee to avoid the tax liens and has shown no appropriate circumstances for so acting. Accordingly, we hold that she does not have statutory standing to bring suit to avoid the post-petition liens.
 

 III. ENTITLEMENT TO PENALTIES, FEES, AND COSTS
 

 Pointer’s complaint also alleged that the Taxing Units’ 1985 and 1986 liens did not secure payment of post-petition penalties, fees, or costs. Pointer does not seek to avoid the tax liens for those years. Pointer may certainly seek court determination of the extent of the 1985 and 1986 liens on property of her estate.
 

 The bankruptcy court found that the 1985 and 1986 liens did not secure the payment of penalties, fees, and costs, and the district court affirmed. On appeal, the Taxing Units contend that they are entitled to penalties, fees, and costs that accrued post-petition on the unpaid 1985 and 1986 ad valorem taxes as part of their secured claim. To determine this issue, we look first to § 506(b) of the Bankruptcy Code, which states, in pertinent part, as follows:
 

 To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges
 
 provided for under the agreement
 
 under which such claim arose.
 

 11 U.S.C. § 506(b) (emphasis added). Interpreting this provision, the Supreme Court noted in
 
 United States v. Ron Pair Enterprises, Inc.,
 
 489 U.S. 235, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), that a creditor can only recover fees, costs, or other charges if they are reasonable and arise under an agreement with the debtor. “[I]n the absence of an agreement, post-petition interest is the only added recovery available.”
 
 Id.,
 
 109 S.Ct. at 1030. In the instant case, there was no agreement between the parties for the recovery of fees, costs, or other charges.
 

 The Taxing Units argue that § 506(b) concerns the award of penalties, fees, and costs under a typical security agreement, and not, as is the case here, under a statutory lien. They also contend that the language in
 
 Ron Pair
 
 regarding the recovery of fees and costs is mere dicta.
 
 [10]
 

 We find these contentions meritless. As the district court correctly noted, the plain language of § 506(b) distinguishes between voluntary secured claims (i.e., security agreements) and involuntary secured claims (i.e., statutory liens). All creditors can recover interest on an oversecured claim, but only creditors who have voluntary secured claims can recover penalties, fees, and costs. Moreover, while the Supreme Court’s language in
 
 Ron Pair
 
 may be dicta, it has been adopted by several courts as law. In
 
 In re Parr Meadows Racing Ass’n, Inc.,
 
 the Second Circuit noted the following:
 

 Ron Pair
 
 also answers the question whether, under § 506(b), the county is
 
 *90
 
 entitled to priority on its penalty claims. Under the bankruptcy code, “[r]ecovery of fees, costs, and charges” is allowed “only if they are reasonable and provided for in the agreement under which the claims arose.” In the absence of such an agreement, fees and costs are not recoverable.... Here, the claims for penalties arose, not under an agreement between the parties, but by operation of law under the act.
 

 880 F.2d 1540, 1549 (2d Cir.1989) (citing
 
 Ron Pair,
 
 109 S.Ct. at 1030),
 
 cert. denied,
 
 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990);
 
 see also In re California Wholesale Elec. Co.,
 
 121 B.R. 360, 367 (Bankr.C.D.Cal.1990) (“here, the State’s claim for penalties ... arose not under an agreement between the parties, but by operation of law under the tax act. Consequently, the State is not entitled to recover penalties as part of its secured claim.”) (citing
 
 Ron Pair).
 
 We agree with the Second Circuit’s interpretation of
 
 Ron Pair,
 
 and hold that the Taxing Units are not entitled to post-petition penalties, fees, and costs for the unpaid 1985 and 1986 ad valorem taxes as part of their secured claim.
 

 IV. CONCLUSION
 

 We find that Pointer lacked standing under the Bankruptcy Code to avoid the Taxing Units’ 1987 and 1988 ad valorem tax liens. We therefore reverse the judgment below insofar as it held that the 1987 and 1988 liens violated § 362, and we remand with instructions to dismiss the portion of Pointer’s complaint seeking to avoid those liens. We affirm the judgment of the district court that the Taxing Units are not entitled to post-petition penalties, fees, or costs as part of their secured claim for the unpaid 1985 and 1986 taxes. The judgment of the district court is therefore AFFIRMED in part and REVERSED and REMANDED in part. Each party shall bear its own costs.
 

 [1]
 

 . Texas ad valorem property tax liens attach each year pursuant to Tex.Tax Code Ann. § 32.01
 
 et seq.
 
 (Vernon 1982 & Supp.1991).
 

 [2]
 

 . The circuit courts that have thus far addressed the issue have not cited 28 U.S.C. §§ 959 and 960 or made any attempt to harmonize those statutes with §§ 362, 364 and 546 of the Bankruptcy Code.
 

 [3]
 

 . Specifically, Pointer’s complaint sought the following relief:
 

 1. That the bankruptcy court set the extent, validity, and priority of the Taxing Units liens against the Valwood Village Apartments;
 

 2. That the Taxing Units be found to have no liens on the property for 1987 and 1988 ad valorem taxes;
 

 3. That the exact amount of the base taxes for the years that are secured by a lien against the property be fixed at sums specified in exhibits to the complaint.
 

 4. That no lien be valid against the property to secure any penalty or fees, and that any lien secure only the payment of base taxes with simple interest thereon.
 

 [4]
 

 . Creditors are clearly intended to benefit from § 362. The legislative history of subparagraph (a)(1) states, in pertinent part:
 

 The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor’s property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor’s assets prevents that.
 

 H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), S.Rep. No. 989, 95th Cong., 2d Sess. 49 (1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 5787, 5835, 6297.
 

 [5]
 

 . Several authorities suggest that only the trustee or debtor-in-possession can seek the avoidance of transfers of property that violate the stay.
 
 See In re Brooks,
 
 79 B.R. 479, 481 (9th Cir. BAP 1987) ("[I]f the debtor or the trustee chooses not to invoke the protections of § 362, no other party may attack any acts in violation of the automatic stay.”),
 
 aff'd,
 
 871 F.2d 89 (9th Cir.1989);
 
 In re Stivers,
 
 31 B.R. 735, 735 (Bankr.N.D.Cal.1983) ("[T]he automatic stay operates in favor of debtors and estates (represented by trustees and debtors-in-possession) only and ... it gives junior lienholders and other parties interested in the property affected by the automatic stay no substantive or procedural rights."); Martin J. Bienenstock,
 
 Bankruptcy Reorganization
 
 131-32 (1987) (“in chapter 11 cases, the sole entities with standing to seek redress for an automatic stay violation are debtors-in-possession or trustees”).
 
 But see In re Reserves Dev. Corp.,
 
 78 B.R. 951 (W.D.Mo.1986),
 
 rev'd on other grounds,
 
 821 F.2d 520 (8th Cir.1987).
 

 [6]
 

 . The legislative history of § 549 is instructive. “[Section 549] modifies section 70(d) of current law. It permits the trustee to avoid transfers of property that occur after the commencement of the case. The transaction must either have been unauthorized, or authorized under a section that protects only the transferor.” H.Rep. No. 595, 95th Cong., 1st Sess. 375 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 90 (1978) U.S.Code Cong. & Admin.News 1978, 5787, 5876, 6331. As one treatise notes, “[t]he apparent intent of [§ 70(d) of the Bankruptcy Act of 1938] was to invalidate all transfers not granted specific protection under the statute, and thus set definite limits beyond which the courts could not go in protecting post-petition transactions.” 4
 
 Collier on Bankruptcy
 
 ¶ 549.03[1] (1991). One major change from § 70(d) of the Act of 1938 is that, under § 549, the right of the trustee to avoid and recover the transfers does not depend on the good faith of the transferee, but instead is based on whether the transfer was authorized.
 
 See
 
 Patrick A. Murphy,
 
 Creditor’s Rights in Bankruptcy
 
 § 14.08 (2d ed. 1991).
 

 [7]
 

 . As noted in
 
 In re Timberline Prop. Dev., Inc.,
 
 115 B.R. 787, 791 (Bankr.D.N.J.1990), "a lien cannot be imposed on property of the estate without court approval.... The bankruptcy court, under 11 U.S.C. § 549(a), must approve a post-petition transfer of property of the estate. Since attachment of a lien is such a transfer, it is subject to court approval. 11 U.S.C. § 101(50).”
 
 See also In re Elec. City, Inc.,
 
 43 B.R. 336, 342-43 (Bankr.W.D.Wash.1984) (“[T]he assertion of a lien as a post-bankruptcy transfer ... would be subject to invalidation under § 549 despite the ‘passive’ creation of the lien.”).
 

 [8]
 

 . This court has noted that a transfer of property made in violation of the stay constitutes an unauthorized post-petition transfer which may be avoided by the trustee under § 549.
 
 In re Missionary Baptist Found. of Am., Inc.,
 
 796 F.2d 752, 764 (5th Cir.1986) (transfer of warrants for medicaid and medicare reimbursement payments from debtor to bank violated automatic stay, and trustee was entitled to invalidate transfer pursuant to § 549);
 
 see also In re Brooks,
 
 79 B.R. 479, 480 (9th Cir. BAP 1987),
 
 aff’d,
 
 871 F.2d 89 (9th Cir.1989).
 

 [9]
 

 . 11 U.S.C. § 1107(a) gives a debtor-in-possession all rights of a trustee under chapter 11.
 

 [10]
 

 . The Supreme Court in
 
 Ron Pair
 
 had before it the narrow issue of whether § 506(b) of the Bankruptcy Code allows a creditor to receive post-petition interest on a nonconsensual ov-ersecured claim allowed in a bankruptcy proceeding. The Court concluded that it does so allow. 109 S.Ct. at 1030.