**GALVESTON INDEPENDENT SCHOOL DISTRICT, et al.**

v.

**HEARTLAND FEDERAL SAVINGS AND LOAN ASSOCIATION, et al.**

**Civ. A. No. G–93–147.**

United States District Court, S.D. Texas, Galveston Division.

Oct. 5, 1993.

David Jameson, Galveston, TX, for Galveston Independent School Dist., Galveston College, Galveston County Navigation Dist. No. One, Galveston County Dist. No. One and City of Galveston, TX.

John A. Lee, David A. Zdunkewicz, Andrews & Kurth, Houston, TX, for Heartland Federal S & L Ass'n.

Brent J. Richbrook, Lyons Plackemeier & Millwood, Texas City, TX, for Galveston County.

## ORDER

KENT, District Judge.

This is a tax collection suit. The parties dispute the amount of interest and penalties due on the delinquent and undisputed base ad valorem taxes assessed against the Defendant's property. Before the Court are cross motions for summary judgement, on the parties' agreed statement of facts. All parties concede that there are no disputed fact issues to be decided, and that resolution of the case awaits only the Court's answers to questions of law.

## Background

The government entities seeking collection in this suit are the Plaintiffs Galveston Independent School District, Galveston College, and Galveston County Navigation District No. 1 (Plaintiffs), and the Impleaded Party Defendants (re-aligned as plaintiffs) City of Galveston (City) and Galveston County (County) (collectively the Taxing Authorities). The taxes at issue are those assessed in 1990 and 1991 against an apartment complex then owned by The Landings of Galveston, Ltd. (Landings). At the time the associated tax liens attached to this property, the Defendant Heartland Federal Savings and Loan Association held a mortgage lien on the property.

The 1990 taxes remained unpaid and became delinquent on February 1, 1991. On April 2, 1991, Landings filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. This, of course, created an automatic stay, preventing the Taxing Authorities and Heartland from foreclosing on their respective liens against the subject property. The Bankruptcy Court granted relief from this stay for Heartland to foreclose on the property on December 4, 1991. Heartland did so, and became the record owner of the property, on January 7, 1992.

The 1991 taxes became delinquent on February 1, 1992. Plaintiffs and the City demanded payment from Heartland for the 1990 and 1991 taxes, plus statutory interest and penalties, on February 25, 1992. In their demand, these parties included charges for interest and penalties on the 1990 base tax of 25%, in strict accordance with chapter 33 of the Texas Tax Code. In addition, the bills added from 10% to 15% of

that total for collection costs.[1] Thus the penalties and interest charged on this tax, delinquent one year, totaled up to nearly 44% of the base amount.

Heartland considered this charge excessive. On April 7, 1992, Heartland offered to pay the outstanding taxes plus only pre-petition interest and penalties, and a post-petition self-described "market" interest rate of six percent. Plaintiffs responded by filing this lawsuit in State District Court in May, 1992.

In January of 1993, Heartland again offered to each Taxing Authority, as full payment, the amount Heartland felt it owed for these taxes. The Taxing Authorities each rejected the offer. On April 13, 1993, Heartland tendered the undisputed base tax to each entity as partial payment, and all but the County accepted this payment. The Taxing Authorities now collectively claim that the remaining unpaid taxes, penalties, and interest on this property total over $200,000.

### Claims

The parties agree that the 1990 taxes became delinquent on February 1, 1991, and accrued, until April 2, 1991, the interest and penalties prescribed in Chapter 33 of the Texas Tax Code. The parties' calculations differ from thence forward.

Heartland now contends, as it has since its April 7, 1992, settlement offer, that § 506(b) of the Bankruptcy Code prohibits the assessment of penalties and costs on the 1990 and 1991 taxes. Heartland also contends that this same provision allows the imposition of interest only at either the federal judgment rate or a "market" rate during this period, rather than the statutory rate. Furthermore, Heartland believes that its good-faith efforts to settle these claims, coupled with the Taxing Authorities' bad-faith responses, should prevent

the collection of statutory penalties and interest after that time. Finally, Heartland throws in usury and collateral estoppel defenses, as well as a claim that the tax liens on personal property are not perfected.

The Taxing Authorities argue that the Bankruptcy proceedings had no effect on the accumulation of interest and penalties as dictated by state law, since their collection efforts have taken place only since the removal of the property from the bankruptcy estate. The Taxing Authorities also deny the validity of the other asserted defenses. Then they, too, dish out some vague rebuttal allegations like "res judicata," "estoppel," and "laches," for good measure.

### Analysis

As a preliminary matter, it should be noted that Heartland is not personally liable for the taxes at issue here, as it did not own the property on January 1 of either 1990 or 1991. *See* Tex.Tax Code Ann. § 32.07 (Vernon 1992).[2] Rather, the Taxing Authorities' remedy in this case is solely foreclosure on the subject property, based on their statutory liens which attached on those same dates. *See* Tex.Tax Code Ann. § 32.01 (Vernon 1992). Hence the question presented to this Court, properly framed, is not how much tax Heartland owes, but how much tax is secured by the tax liens. However, of course, as a practical matter Heartland must pay these taxes to avoid this foreclosure.

### I. Section 506(b) and the 1990 Tax Lien

#### A. Penalties and Costs

█ As matters stood when Plaintiffs and the City first demanded payment from Heartland in February 1992, Heartland was mostly correct in its position that the Taxing Authorities' claims for penalties, in-

---

**1.** As permitted under § 33.07 of the Texas Tax Code, after July 1 of the year in which a tax becomes delinquent all of the Taxing Authorities except the Navigation District apparently assess a penalty for collection costs of 15% of the total tax, interest, and penalties due. The Navigation District assesses a 10% penalty.

**2.** The Court could envision a scenario in which Heartland *assumed* personal liability as a condition of the lift of stay in Bankruptcy Court. However, the nature of any obligations assumed by Heartland vis-a-vis these taxes is entirely unclear on the record before the Court.

terest, and costs were largely preempted by federal law. Under § 506(b) of the Bankruptcy Code, the Taxing Authorities are not entitled to penalties, fees, and costs accruing on an involuntary secured claim while the attached property is subject to the Code's automatic stay.

Section 506(b) governs the amount of interest and penalties that an over-secured creditor is allowed to recover from a bankruptcy estate. In pertinent part, it states that the creditor shall be allowed "interest on such claim, and any reasonable fees, costs, or charges *provided for under the agreement* under which such claim arose." 11 U.S.C. § 506(b) (emphasis added). Statutory tax liens are by definition nonconsensual, and arise under no agreement. In such cases, the United States Supreme Court has unequivocally interpreted § 506(b) to mean that "in the absence of an agreement, post-petition interest is the only added recovery available." *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

The Fifth Circuit applied this rule to facts amazingly similar to those at hand in *In re Pointer*, 952 F.2d 82 (5th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 3035, 120 L.Ed.2d 904 (1992). There a dispute arose between the mortgagee of an apartment building, Pointer, and the taxing units of the City of Farmer's Branch, Texas, as to the extent of ad valorem tax liens on the building. Exactly as here, the mortgagee had purchased the building at her own foreclosure sale after obtaining relief from the stay in her mortgagor's Chapter 11 bankruptcy. Exactly as here, the taxing units claimed a right to statutory penalties and costs accruing after the mortgagor filed its bankruptcy petition. And exactly as this Court now holds, the Fifth Circuit held that "the Taxing Units are not entitled to post-petition penalties, fees, and costs for the unpaid … ad valorem taxes as part of their secured claim." *Id.* at 90.

■ The Galveston Taxing Authorities argue that *Pointer* is not controlling because it was a bankruptcy case, and this is not. This distinction is entirely irrelevant.

*Pointer* took the form of an adversarial proceeding in Bankruptcy Court solely because the mortgagee happened to file her own Chapter 11 proceeding some time after her mortgagor did. The application of the Bankruptcy Code to the *Pointer* holding referred only to the effect of § 506(b) on claims arising from the *prior* Chapter 11 case. At least to the extent that the taxing units' claims were secured at the time Pointer foreclosed on the property, there is no reason to suspect the outcome would have been different if Pointer had remained solvent and sought adjudication of this dispute in a non-bankruptcy forum.

The only rights the Taxing Authorities have in Heartland's apartment building are their statutory liens, which secure payment of the taxes, interest and penalties which have accrued on that property. These liens only exist to the extent they survived Landings' bankruptcy. *Ron Pair* and *Pointer* dictate that no penalties and costs accrued against this security interest while the property was under the supervision of the Bankruptcy Court. This Court rejects the contention that the liens somehow instantly blossomed into a more valuable asset once the mortgagee was allowed to foreclose on it. Although much expense and animosity might have been spared had the parties either agreed to or litigated the extent of the tax liens before Heartland foreclosed, the Taxing Authorities did not revive lost penalties by waiting silently in the Bankruptcy Court until Heartland assumed ownership of a building burdened by unliquidated claims.

### B. Interest

■ As noted above, however, § 506(b) does not necessarily bar the Taxing Authorities from recovering *interest* accruing on the 1990 taxes for all relevant time periods. Whether a lien is held by consent or not, "[r]ecovery of postpetition interest is unqualified." *Ron Pair*, 489 U.S. at 241, 109 S.Ct. at 1030. Heartland argues, however, that the applicable rate of interest is not that dictated by the Texas Tax Code, but rather should be either the federal judgment rate or a "market" rate.

■ In support of its position, Heartland relies on the analogous case of *In re Laymon*, 117 B.R. 856 (Bankr.W.D.Tex.1990). There the court held that § 506(b) allows an oversecured contract creditor only the federal judgment rate of interest, rather than the contract rate. This Court finds that opinion to be a well-reasoned and scholarly interpretation of § 506(b). However, in arguing *Laymon* to this Court, both parties overlooked one rather significant aspect of the case—THE FIFTH CIRCUIT COURT OF APPEALS REVERSED IT. *In re Laymon*, 958 F.2d 72 (5th Cir.), *reh'g denied, reh'g en banc denied, cert. denied,* — U.S. ——, 113 S.Ct. 328, 121 L.Ed.2d 247 (1992). The case was not reversed recently, but well over a year ago. It was not "reversed on other grounds," but reversed on the very grounds for which Heartland cites it.[3]

Heartland also cites Eighth Circuit authority for the proposition that a "market" rate of interest should apply to the debt. *U.S. v. Neal Pharmacal Co.*, 789 F.2d 1283 (8th Cir.1986). To the extent that *Neal* actually suggests this, this Court respectfully disagrees. Taxing authorities must be allowed to levy accurate assessments in an efficient and certain manner. The "market rate" suggestion leaves an unresolved fact issue in every bankruptcy case, which would require litigation for every new day's market. Moreover, the Court wonders if Heartland would actually be pleased with this Court's determination of the "market" rate of interest which banks would charge a taxpayer under these circumstances, in which the debtor is clearly a credit risk. For illustration purposes only, the Court notes that while 1% per month (the statutory rate) is higher than what banks currently charge their best corporate customers, it is still lower than the interest rate on many if not most consumer debts, even for consumers with good credit. *Cf. Meilink v. Unemployment Reserves*

*Comm'n*, 314 U.S. 564, 567, 62 S.Ct. 389, 86 L.Ed. 458 (1942) (reasoning that a 12% per annum statutory delinquency fee was not an unreasonable or penal interest rate, considering the high credit risk of the bankrupt debtor).

Speculation aside, in *Laymon* the Fifth Circuit held that § 506(b) allows an oversecured contract creditor its contractual rate of interest, rather than (as the Bankruptcy Court held) the federal judgment interest rate. While not directly on point, this case suggests—and this Court so holds—that nonconsensual oversecured creditors also receive the rate of interest dictated by the statutes under which their liens arise, provided the charge can be reasonably characterized as true interest rather than as a penalty. *See In re Davison*, 106 B.R. 1021, 1022 (Bankr.D.Neb.1989) (allowing County its 14% per annum statutory interest rate on delinquent tax lien); *In re Krump*, 89 B.R. 821, 825 (Bankr.D.S.D.1988) (awarding statutory rate of interest on tax lien); *In re Charter Co.*, 63 B.R. 568, 571 (Bankr. M.D.Fla.1986) (allowing holder of oversecured mechanic's lien the rate of interest specified by Texas statute); *cf. Meilink*, 314 U.S. 564, 62 S.Ct. 389 (allowing state fund to recover statutory 12% per annum interest on delinquent contributions from debtor, as this was not so high as to constitute an un-allowed penalty).

■ This final proviso, however, raises a question which, although not briefed by the parties, is necessary to the resolution of this case. That is: Is the charge denominated "interest" in the Texas Tax Code "interest eo nomine"—interest imposed as compensation for the detention of money— or simply another penalty for delinquency? As it happens, the answer changed during the time period relevant here. Prior to August 26, 1991, the Texas courts had long held that the "interest" referred to in § 33.01(c) of the Tax Code in fact amounted to simply another penalty, rather than real

---

**3.** In light of the fact that counsel for the Taxing Authorities also failed to determine the status of this authority, the Court will presume that the citation of this case by Heartland resulted from counsel's inattention rather than from a deliberate attempt to misguide the Court. The Court earnestly warns counsel for Heartland, however, that a different conclusion would have had serious consequences for the disposition of this case, and might well have resulted in significant santions under Fed.R.Civ.P. 11.

interest. *Irving Indep. School Dist. v. Packard Properties*, 970 F.2d 58, 64–65 (5th Cir.1992); *Jones v. Williams*, 121 Tex. 94, 45 S.W.2d 130 (1931). Hence the "interest" charged by the Taxing Authorities prior to August, 1991, is barred by § 506(b). *Cf. Irving, supra* (holding that a school district cannot charge the FDIC for the interest specified in § 33.01(c) for time prior to August, 1991, as such was then classified a penalty).

■ Effective August 26, 1991, however, the Texas legislature amended § 33.-01(c) with the following language: "Interest payable under this section is to compensate the taxing unit for revenue lost because of the delinquency." This amendment overruled *Jones. Irving*, 970 F.2d at 65. Application of the amendment is not retroactive, however. *Id.* Therefore, the Taxing Authorities are entitled to statutory interest for every month or portion of a month after August 26, 1991, in which the 1990 taxes remained unpaid. Tex. Tax Code § 33.01(c).

## II. Post–Bankruptcy Penalties and Interest

Through January 1992 the total tax liability secured by the 1990 and 1991 tax liens on Heartland's property could have been definitively calculated. This is not to say that the analysis above was obvious or simple, but only that the result is dictated by clearly established Fifth Circuit and Texas law. On that date, the 1990 tax lien secured 117% of the 1990 base taxes—the base tax, the undisputed 11% pre-petition interest and penalties, and the 6% interest which accrued from August 1991 through January 1992. The 1991 tax lien secured only the base tax owed for that year.

As discussed more fully below, the bankruptcy proceedings had no effect on the ultimate value of the 1991 tax lien. The treatment of the penalties secured by the 1990 lien after January 1992, however, is not directly addressed either by the Texas Tax Code or federal law. The Tax Code does not contemplate having part of its penalty scheme preempted by the Bankruptcy Code. *Pointer* does not address the

issue because there the property left one bankrupt estate only to immediately join another. Hence there existed no period in which liability for penalties might have resumed. Here, in contrast, the Bankruptcy Court has long since lost jurisdiction over this dispute. Nonetheless, the Court feels that the general principles of Texas law pertaining to tax collection provide more than adequate guidance for the resolution of this case.

### A. *The 1990 Tax Lien*

■ As Heartland conceded in its April 7 settlement offer, potential liability for penalties on the 1990 tax lien resumed when Heartland purchased the property on January 7, 1992. The only remaining questions of substance, then, are when and if any pertinent penalties would have attached.

State law provides no clear guidance here. In Galveston, liens on delinquent taxes secure two penalties which, by statute, accrue on July 1 "of the year in which [the tax] becomes delinquent." Tex. Tax Code § 33.01; § 33.07 (Vernon 1992). Tax Code § 33.01 imposes a 12% delinquency penalty on that date, while § 33.07 allows local taxing units to impose an additional penalty after July 1 of up to 15% of the amount of tax, penalties, and interest due, to defray collection costs.

Here, however, July 1 "of the year in which" the 1990 tax became delinquent occurred while bankruptcy proceedings barred the accrual of these penalties. The Texas Tax Code provides no alternate date of attachment for such a case. Nonetheless, the Taxing Authorities point out that the bankruptcy protection ended over a year before Heartland tendered even a partial payment of the tax. Intuitively, they argue, Heartland should not be able to avoid these penalties where the post-bankruptcy delinquency period has long exceeded the five-month pre-July period contemplated by the Tax Code.

■ This Court agrees with this intuition. Fortunately, however (at least from a taxpayer's perspective), tax penalties are not imposed on the basis of intuition. Be-

ing penal in nature, the penalty provisions of the Tax Code must be strictly construed. Moreover, in the absence of a statute so providing, no penalty is recoverable on unpaid taxes. 69 Tex.Jur.3d *Taxation* § 387 (1989). Although this Court has scrutinized all possibly relevant provisions of the Tax Code in an attempt to formulate some deadline by which Heartland should have paid the 1990 tax in order to avoid penalties, none can be found. Therefore, this Court cannot impose such penalties except arbitrarily. Because the July 1 deadline is mandatory, and the Tax Code does not provide any means whereby this Court can determine an alternate date on which the penalties attached, the 1990 lien does not secure any additional penalties which did not accrue before April 2, 1991.

■■■ Furthermore, under Texas law this holding also precludes the Taxing Authorities from otherwise recovering attorney's fees for it efforts to collect the 1990 taxes. The Tax Code allows two alternate means of recovering attorney's fees. Section 33.07 authorizes local taxing units to adopt the above-referenced fixed percentage penalty "to defray costs of collection," and section 33.48(a)(4) allows the recovery of "reasonable" attorney's fees. However, the two provisions are mutually exclusive; a taxing unit may recover only one or the other. *City of Houston v. First City*, 827 S.W.2d 462, 474 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Moreover, when taxing units adopt a penalty under § 33.07, they relinquish any right to recovery under § 33.48, even if recovery under § 33.07 later proves unavailable. *Uvalde County Appr'l Dist. v. Parker*, 733 S.W.2d 609, 611 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); *Lakeridge Dev. Corp. v. Travis County Water Control and Imp. Dist.*, 677 S.W.2d 764, 766 (Tex.App.—Austin 1984, no writ).

Here all of the Taxing Authorities have apparently adopted penalties as allowed by § 33.07. The bankruptcy proceedings prevented that penalty from attaching to the 1990 tax lien. Nonetheless, the adoption of § 33.07 bars recovery of attorney's fees under § 33.48. As the Taxing Authorities repeatedly noted in their briefs, in applying state law this Court is bound by the decisions of state courts. Hence, the Taxing Authorities are limited, post-petition, to the addition of 1% per month interest on the 1990 tax lien beginning in August, 1991.

*B. The 1991 Tax Lien*

■■■ Heartland now contends that the Bankruptcy Code also limits interest and penalties on the 1991 tax lien against its property, since the lien attached while the property was owned by a bankrupt entity. This argument is so utterly without merit as to be ridiculous. · During the time that the apartment building was part of the bankruptcy estate, the 1991 tax lien secured only the base taxes for 1991, and the Taxing Authorities have never claimed otherwise. Heartland does not contend that § 506(b) has any effect on that base tax lien. Yet Heartland makes a vague argument to the effect that, having once been in a bankruptcy proceeding, this unliquidated tax lien is forever barred from securing statutory penalties for delinquency.

Clearly, this is not so. The Taxing Authorities only seek delinquency penalties and interest that arose after February 1, 1992—*after* the property emerged from bankruptcy, and *after* the property was purchased by Heartland at foreclosure. The tax lien survived both of these events, and the taxes were not forgiven in Landings' bankruptcy. Heartland has put forth no valid argument as to why a Bankruptcy Code provision governing the distribution of assets to creditors might have *any* effect on penalties imposed by statute after the asset has been distributed. Heartland agreed to accept that asset without first liquidating the claims of a superior lienholder.[4] Heartland cannot now ask this Court to grant that asset the perpetual protection of the bankruptcy laws. When Heartland purchased the building in Janu-

---

**4.** Heartland cannot claim surprise at the tax bill it received after purchasing the property. Heartland had at least constructive notice of the liens, and the bankruptcy record indicates it had ample actual notice as well.

ary, 1992, it purchased the same thing any other purchaser would have: real estate burdened by a tax lien against taxes that were about to become delinquent.

## C. Estoppel

■ Heartland also contends, apparently under some theory of equitable estoppel, that the post-petition conduct of the Taxing Authorities precludes the further imposition of penalties on the tax debt. On April 7, 1992, Heartland responded to payment demands by the Plaintiffs and the City with an offer to pay the delinquent 1990 and 1991 taxes "along with penalties and interest computed in accordance with our interpretation of the relevant authorities." Heartland's interpretation, as set forth in the letter, was that the 1990 tax was subject to statutory penalties and interest until the bankruptcy filing in April 1991, but that thereafter "accrual of penalties and interest would have ceased, and not resumed until the property was purchased by [Heartland] on January 7, 1992." (Hence Heartland apparently conceded that interest and penalties would resume after January 7, 1992). Heartland offered to pay 6% per annum interest on the 1990 tax for the interim bankruptcy period. The letter did not dispute the Taxing Authorities' calculations as to the 1991 assessment. The Plaintiffs did not respond to this offer (at least not in writing) before filing this lawsuit the next month.

■ Before reaching the legal analysis of this claim, this Court notes that it agrees that the conduct of the Taxing Authorities is unfortunate. This Court strongly feels that all potential litigants, whether government, corporate, or individual, have a duty to make objectively reasonable attempts to settle their disputes before calling upon the taxpayers to provide this relatively costly forum. While what constitutes "reasonable" efforts will typically be much less for a taxing unit than for others, at a minimum it would seem a rebuttal offer or even a rejection letter would have been called for on these facts.

■ That said, it should also be clear that reason and pragmatism dictate that tax collectors are not held to ordinary standards of politeness and civility. They are charged with collecting money from all property owners in their jurisdiction, few of whom pay happily. The orderly and efficient administration of their collection system would significantly suffer if they were required to give excessive consideration to every voice of protest. For these reasons the law heavily favors the strategic position of the tax collector in litigation; he gets all the leverage. The law generally provides very little incentive for the collector to accept a settlement offer, such as Heartland's, for less than the amount of tax actually owed.

■ This means that general principles of equity have little or no application to the calculation of penalties on delinquent taxes. Rather, specific rules dictate the "fair" means by which a taxpayer can dispute his tax bill without incurring additional penalties. In Texas, a taxpayer can abate penalties while the resolution of a tax dispute is pending in only one way: pay (or at least offer to pay) the full amount of tax actually due. *Dickinson Indep. School Dist. v. McGowan*, 533 S.W.2d 127, 130 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *Republic Ins. Co. v. Highland Park Indep. School Dist.*, 123 S.W.2d 784, 794 (Tex.Civ.App.—Dallas 1938, writ dism'd w.o.j.). The tax collector is not required to accept partial payment on the taxpayer's claim that such amount is all that is due, and a tender of the base tax without the proper interest and penalties is ineffective. 533 S.W.2d at 130. In a situation such as here, of course, where a legitimate question exists as to what the correct amount due is, this puts the taxpayer at a disadvantage; it is difficult to offer the amount due, if that is unclear. Yet if the taxpayer refuses to pay more than his calculation of the tax owed, he bears all the risk of being wrong.

Heartland's offer of April 7, 1992, was very close to what was actually due. The only difference is that Heartland's property actually secured 6% total interest on the 1990 tax for the period April 2, 1991, to

January 7, 1992, while Heartland offered only 6% per annum for that period—i.e., *less* than 6% for that nine-month period. This offer was much closer to reality than that demanded by the Taxing Authorities, but in this game, close is not good enough. Heartland put all its eggs in one questionable legal basket,[5] and its error will now prove rather expensive.

Moreover, in 1992 Heartland never disputed the amount due on the 1991 tax lien. Yet Heartland never offered to pay this amount independently of the 1990 taxes. This Court is inclined to believe that the Taxing Authorities would have been obligated to accept such an offer to pay off the undisputed and distinct lien for 1991. Furthermore, the evidence indicates that they would have, as they all accepted Heartland's timely payment of the undisputed 1992 taxes in January of 1993. Therefore Heartland has no claim, in law or equity, that the full gamut of penalties and interest do not remain owing on the 1991 tax.

Finally, the Court notes that the Texas Tax Code provides for the mandatory waiver of penalties if an "act or omission" of the tax collector "caused or resulted in" a tax delinquency. Tex. Tax Code § 33.011 (Vernon 1992). If Heartland had attempted any arguable compliance with the requirements of that provision, the Court would certainly consider the quite plausible argument that the Plaintiffs' refusal to respond to Heartland's letters amounted to such a wrongful omission. However, Heartland knew of the Plaintiff's position at the very latest on May 29, 1992, when the instant litigation commenced. Section 33.011 (if it would have applied) gave Heartland 21 days thence to pay its taxes in order to be entitled to the waiver, and Heartland made no attempt to do so.[6]

## III. Miscellaneous Claims

The parties have asserted various other claims which merit only the most brief mention.

■ *Usury:* Common sense should dictate that a statute of general application, such as the Texas usury statute, will not generally render illegal another statute, such as the Texas scheme of interest and penalties on delinquent taxes. Where common sense falters, one need only look to precedent. *Nalle v. Austin*, 41 Tex.Civ. App. 423, 93 S.W. 141 (1906, writ ref'd).

■ *Collateral Estoppel/Res Judicata:* Both sides assert some version of this claim, on the theory that Heartland's tax liability was determined in the bankruptcy proceedings. Obviously, if any party had come forward with a judgment of the Bankruptcy Court which said "the tax liens are worth X dollars," this dispute would be easily resolved. As neither side has done so, it is clear that all parties neglected to get such a finding in that proceeding, needlessly necessitating this one.

■ *Personal Property Tax Lien Validity:* Heartland now argues that the subject liens on personal property never properly attached, due to the Landings' bankruptcy. Regardless of the questionable merits of this claim, Heartland has no standing to assert it. *Pointer*, 952 F.2d at 86.

## IV. Conclusion

As for the 1990 tax lien, both motions for summary judgment are partially GRANTED and partially DENIED. The 1990 tax lien secures the base tax for that year, the 11% interest and penalties which accrued before April 2, 1991, and 1% per month interest since August, 1991, inclusive. When Heartland made partial payment to the Plaintiffs and the City on April 13, 1993, this amounted to 132% of the base tax. The portion of the base tax which remained unpaid after that date continues to accrue 1% per month interest until Final

---

5. The Fifth Circuit reversed *Laymon* the day after Heartland's offer.

6. The Court has no evidence of any correspondence between Heartland and the County. Hence the County is not even arguably guilty of any wrongful conduct. Furthermore, Heartland had at least constructive notice of the County's lien, and by May 29, 1992, Heartland knew of the County's position as to the amount owed.

Judgment. The County's tax lien secures 138% of the base tax as of October, 1993.

As for the 1991 tax lien, the Taxing Authorities' motion for summary judgment is GRANTED, and Heartland's motion is DENIED. The 1991 lien secures the 12% penalty under § 33.01(a), 1% per month interest since February 1992 (15% in April 1993, 21% in October 1993) under § 33.01(c), and the authorized collection penalty under § 33.07. This means that on April 13, 1993, the lien secured 139.7% of the base tax for the Navigation District, and 146.05% of the base tax for the other Plaintiffs and the City. The remaining base tax after that date continued to accrue interest at 1% per month, and the remaining unpaid tax, penalty, and interest continued to be subject to the § 33.07 collection penalty. The County's 1991 tax lien secures 152.95% of the base tax as of October, 1993.

However, Galveston County has not submitted sufficient evidence on which this Court can render final judgment. The records offered by the County contain only entries for "total taxes," "total penalty," and "grand total." In order to render judgment for the County in accordance with this opinion, the County is ORDERED to submit to the Court sufficient records, supported by affidavit, showing the base tax for 1990, the base tax for 1991, and the penalties and interest accrued as described herein, including proof of the County's adopted penalty under § 33.07. Such records shall be submitted within 14 days of the date of this Order, or the Court will treat the County as being in civil contempt, for which sanctions to induce performance will issue.

In furtherance of this Order, the Taxing Authorities are ORDERED to revise their tax rolls to reflect the amounts lawfully owing on the subject property, in accordance with this opinion.

The Taxing Authorities are further ORDERED to submit to this Court, within 14 days of the date of this Order, a Proposed Final Judgment in proper form reflecting the facts and law as stated herein. The Final Judgment will specify in detail, for each taxing unit, the base taxes owing for each year; § 33.01 penalties and interest accrued to the date of any partial payment; § 33.07 penalties accrued to the date of any partial payment; the pro-rated application of partial payments to tax, penalties, and interest; additional penalties and interest accrued on any remaining unpaid tax; and the sum total of outstanding tax, penalties and interest on the subject property. The Final Judgment will order a sale of the property to pay this tax, and award all costs to the Taxing Authorities.

It is further ORDERED that the parties file no further pleadings on any substantive issues in this Court, including motions to reconsider and the like, except to point out any purely clerical errors in the Court's Order or Judgment. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

IT IS SO ORDERED.