**In re James VULPETTI, Debtor.**

**Bankruptcy No. 94–11094–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida.

June 6, 1995.

---

Bernard I. Rappaport, Miami, FL, for debtor.

Robert C. Meacham, May & Meacham, P.A., Ft. Lauderdale, FL, for Grande Cheese Co.

Amber Donner, U.S. Dept. of Justice, Office of U.S. Trustee, Miami, FL.

### MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

On March 2, 1995, the Court heard a Motion to Determine Amount of Claim, in which Grande Cheese Company ("Grande"), a judgment creditor of the Debtor, asserted an entitlement to postpetition attorneys fees and costs as part of its claim or as an administrative expense. For the reasons that follow, the Court rejects Grande's claim for postpetition fees and costs.

### BACKGROUND

On February 4, 1993, Grande obtained a final summary judgment for $135,000 against the Debtor, James Vulpetti, pursuant to a guaranty executed by the Debtor in favor of Grande. The guaranty agreement obligated the Debtor to pay Grande's attorneys fees and expenses if collection or enforcement of the guaranty became necessary. Grande subsequently obtained a judgment awarding attorneys fees and costs arising out of the litigation. The judgments were recorded in the public records of Dade County, Florida, giving rise to judgment liens in favor of Grande against the Debtor's real property pursuant to Florida law. On April 5, 1994, more than ninety days after Grande recorded its judgments, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.

At the time it obtained the judgment liens, the Debtor's interest in various real estate investments exceeded the amount of Grande's judgments. Grande asserts that throughout the bankruptcy case, it has vigorously pursued its claim and otherwise actively participated in the case, and that as a result of Grande's efforts the Debtor has now revised its plan of reorganization to largely satisfy the claims of all secured and unsecured creditors.

Grande argues that it is entitled to an award of postpetition attorneys fees and costs on several alternative grounds: (1) under *Fla.Stat.* § 57.115, which provides that "[t]he Court may award against a judgment debtor reasonable costs and attorney's fees incurred thereafter by a judgment creditor in connection with execution on a judgment"; (2) under § 506(b) of the Bankruptcy Code, pursuant to which the holder of an oversecured claim is entitled to interest "and any reasonable fees, costs or charges provided for under the agreement under which such claim arose"; (3) under *TranSouth Financial Corp. of Florida v. Johnson*, 931 F.2d 1505 (11th Cir.1991), which held that a successful creditor in a dischargeability proceeding can recover attorneys fees when such fees are provided by an enforceable contract between the creditor and debtor; and (4) under § 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, based upon its "substantial contribution" in the case. Grande also seeks a determination of the extent to which its claim for attorneys fees and costs constitutes an administrative expense.

The Debtor disputes Grande's legal entitlement to recover fees and costs, arguing that: (1) the language of *Fla.Stat.* § 57.115 is discretionary rather than mandatory, and its application should not extend into Bankruptcy Court where the Code already provides specific instances in which fees are recoverable; (2) 11 U.S.C. § 506(b) does not authorize an award of attorneys fees as part of a secured claim for a lien that arises only by operation of law rather than pursuant to a consensual agreement; (3) *TranSouth* is distinguishable as applying only to dischargeability actions; and (4) Grande has not established a basis for a "substantial contribution" claim under § 503.

The Court heard Grande's motion on March 2, 1995, and requested supplemental memoranda from the parties. Upon consid-

eration of the parties' argument at hearing, the motion, response and memoranda, and relevant authorities, the Court finds that Grande's postpetition attorneys fees and costs are not part of its claim in this case and do not constitute administrative expenses. Moreover, Grande is not entitled to post-judgment, prepetition fees.

### DISCUSSION

### I.  Florida Statutes § 57.115

■  Section 57.115 of the *Florida Statutes* provides as follows:

(1) The court may award against a judgment debtor reasonable costs and attorney's fees incurred thereafter by a judgment creditor in connection with execution on a judgment.

(2) In determining the amount of costs, including attorney's fees, if any, to be awarded under this section, the court shall consider:

(a) Whether the judgment debtor had attempted to avoid or evade the payment of the judgment;  and

(b) Other factors as may be appropriate in determining the value of the services provided or the necessity for incurring costs in connection with the execution.

This provision "allows the discretionary award to a judgment creditor of fees incurred in connection with execution on a judgment." *Tower Cranes of America, Inc. v. Monte Campbell Crane Co.*, 627 So.2d 1350 (Fla. 4th DCA 1993) (affirming trial court's denial of attorneys fees under § 57.115).

■  The Court does not find it appropriate to award Grande postpetition fees under this statute. With limited exceptions, the amount of a claim is determined as of the filing date, and non-executory obligations do not continue to mount postpetition. *See* 11 U.S.C. § 502(b) (if objection to a claim is made, the court "shall determine the amount of such claim . . . as of the date of the filing of the petition"). To recover postpetition attorneys fees, Grande would have to establish that its claim under *Fla.Stat.* § 57.115 fits within the confines of those specific Code sections allowing postpetition fees, namely § 506(b) or § 503, or otherwise fits within an

exception carved by *TranSouth.* Because state law cannot provide an independent basis for recovery of postpetition fees outside the scope of § 506(b), § 503, or *TranSouth*, Grande's § 57.115 argument fails.

■  Grande's motion focuses primarily on postpetition fees but also encompasses a request for postjudgment, *prepetition* fees under § 57.115. The Court declines to award these additional fees. First, an award of fees under the statute clearly is discretionary. Grande has not established any compelling justification for awarding these fees. Second, Grande has not shown that all its legal activities fall into the relatively narrow category of fees incurred in connection with "execution" on a judgment for which § 57.115 permits recovery. Accordingly, Grande's request for postjudgment, prepetition fees is denied.

### II.  Bankruptcy Code § 506(b)

■  Grande also argues that, as a creditor holding a claim secured by property greater than the amount of its claim, its allowed secured claim should include interest as well as its attorneys fees and costs under 11 U.S.C. § 506(b). Section 506(b) of the Bankruptcy Code provides:

To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Grande contends that § 506(b) applies since the agreement under which its claim arose provides for the payment of attorneys fees. The problem with Grande's argument is that the "allowed *secured* claim" must arise from "the agreement" for § 506(b) to apply. If the claim is secured only because of a non-consensual lien, such as the judgment lien in this case, fees are not recoverable under § 506(b).

This result is supported by both the text of § 506(b) and cases interpreting the statute. The first clause of § 506(b) refers to an "allowed secured claim." The last clause of

the provision allowing fees to the holder of the claim if a fee provision is included in an agreement requires that it be an "agreement under which *such claim* arose." (emphasis added). Thus, under the statute, the lien must arise from the agreement. Section 506(b) does not apply where, as here, the secured claim arises from a non-consensual lien.

In a case construing the scope of § 506(b), the Supreme Court expressly distinguished between consensual and non-consensual liens and discussed the effect of that distinction on entitlement to attorneys fees:

> The natural reading of [§ 506(b)] entitles the holder of an oversecured claim to post-petition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement. ... Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available.

*United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Furthermore, several lower court decisions have interpreted § 506(b) as requiring that there be a consensual security agreement that provides for fees, rather than a statutory lien. *See, e.g., Matter of Pointer,* 952 F.2d 82 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 3035, 120 L.Ed.2d 904 (1992) (statutory tax lien does not secure postpetition penalties, fees or costs, citing *Ron Pair*); *In re D.W.G.K. Restaurants, Inc.,* 84 B.R. 684 (Bankr.S.D.Cal. 1988); *Matter of Provincetown–Boston Airline, Inc.,* 67 B.R. 66 (Bankr.M.D.Fla.1986).

In *Provincetown–Boston Airline,* the bankruptcy court for the Middle District of Florida held that § 506(b) only authorizes payment of attorneys fees where there is a consensual security agreement and not merely a statutory lien:

> The Bankruptcy Code provides the statutory authority for payment of fees under § 506(b). The Bankruptcy Code does not authorize payment of fees where, as here,

there is no consensual security agreement providing for the creation of a lien. When the lien arises by statute, the secured party is placed in a superior position to that of unsecured creditors, but this improved position does not extend to the payment of fees under § 506(b).

*Provincetown–Boston Airline,* 67 B.R. at 69.

Judge Hargrove's decision in *D.W.G.K. Restaurants* is directly on point. There, prior to bankruptcy, the creditors reduced to judgment an obligation of the debtor arising under an unsecured agreement which provided for attorneys fees. The creditors recorded an abstract of judgment which established a lien against the debtor's property. The creditors sought postpetition attorneys fees and costs under § 506(b) in the bankruptcy court, and the court rejected their claim:

> While it is true that the underlying claim did provide for attorneys' fees ... this alone does not create security for repayment. The security arose when the [creditors'] claim was reduced to judgment and a judgment lien recorded against the debtor's real property. However, the resulting judgment lien is not a security agreement between the parties, as discussed by the legislative history of § 506(b). If the court were to allow a § 506(b) recovery on behalf of the [creditors], it would have to amalgamate these two discrete sets of rights into a single remedy which would provide greater rights than the [creditors] had either before or after judgment.

*D.W.G.K. Restaurants,* 84 B.R. at 687.

■ In sum, § 506(b) does not provide an avenue for recovery of postpetition attorneys fees and costs for a creditor whose secured claim arises by operation of law rather than pursuant to a consensual security agreement. This result does not change simply because the agreement underlying the judgment provided for attorneys fees.

### III. *TranSouth*

■ Grande also attempts to tie its argument under both the guaranty agreement and *Fla.Stat.* § 57.115 to the case of *TranSouth Financial Corp. of Florida v. Johnson,* 931 F.2d 1505 (11th Cir.1991). In *Tran-*

*South,* the Eleventh Circuit found that in an 11 U.S.C. § 523 action to determine dischargeability of a debt, the plain language of the term "claim" includes a debtor's obligation to pay a creditor's attorneys fees under an enforceable contract that gives rise to the claim. *TranSouth,* 931 F.2d at 1507; *see also* 11 U.S.C. §§ 101(5), 101(12) (defining "claim" and "debt"). It also determined that the Bankruptcy Code's "fresh start" policy is not contravened by holding a debtor who loses a dischargeability action responsible for fees because the Code is intended to protect only the *"honest* debtor." *TranSouth,* 931 F.2d at 1508 (emphasis in original). Therefore, the court held that a successful creditor in a § 523 action may recover attorneys fees when such fees are provided by an enforceable contract between the creditor and debtor. *Id.* at 1509.

*TranSouth* is distinguishable on its facts and procedural posture and does not support Grande's position. In *TranSouth,* the creditor brought a dischargeability action under § 523(a)(2) on a promissory note executed by the debtor, which obligated the debtor to pay the creditor's attorneys fees for collection efforts upon default up to a specified amount. The creditor and debtor stipulated to entry of a judgment for an amount equal to the principal owed plus interest, and the creditor's attorneys fees and costs. The bankruptcy court excluded attorneys fees from the judgment, finding no authority to support an award of fees to a creditor in a dischargeability proceeding. The Eleventh Circuit disagreed, finding that § 523 entitles a creditor to collect "the whole of any debt" owed to it in a dischargeability proceeding, including attorneys fees provided by an enforceable contract. *TranSouth,* 931 F.2d at 1507 (citation omitted).

Grande's motion to determine the amount of its claim is not a dischargeability action, and this Court reads *TranSouth*'s holding as being limited to successful actions to determine dischargeability of a debt. There is a logical reason for this distinction. Nondischargeable debts survive bankruptcy. Therefore it makes sense to allow a creditor to include attorneys fees, postpetition or otherwise, in a successful action to fix the amount and dischargeability of a debt. That some logic does not apply to a creditor's attempt to accrue postpetition fees as part of its claim against the estate. The only basis for recovering postpetition attorneys fees in connection with an allowed secured claim is to meet the statutory requirements of § 506. *TranSouth* does not change that result.

## IV. Bankruptcy Code § 503

■ Grande argues that it is entitled to fees under § 503 for its role in promoting a better plan for all creditors. Grande claims it has been the most active creditor throughout the case, and that its activism persuaded the Debtor to propose a plan of reorganization that will largely satisfy the claims of secured and unsecured creditors. Grande also asserts that its efforts were largely responsible for the Court's disapproval of the Debtor's prior disclosure statements. Although not specifically cited, Grande's arguments are rooted in 11 U.S.C. §§ 503(b)(3)(D) and (b)(4), which provide:

(b) After notice and a hearing, there shall be allowed administrative expenses . . . including—

   \*     \*     \*     \*     \*     \*

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

   \*     \*     \*     \*     \*     \*

(D) a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title;

   \*     \*     \*     \*     \*     \*

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection. . . .

"Substantial contribution" is not defined in the Code, but several cases have discussed the parameters of an award of expenses and fees under this provision. Fairly recently, the Third Circuit outlined several of the considerations:

"[I]n determining whether there has been a 'substantial contribution' pursuant to section 503(b)(3)(D), the applicable test is

whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." ... Inherent in the term "substantial" is the concept that the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests. Creditors are presumed to be acting in their own interests until they satisfy the court that their efforts have transcended self-protection. ... "[S]ubstantial contribution" should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate.

*Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 944 (3d Cir.1994) (citations omitted).

Under this standard, Grande has not established sufficient grounds for a substantial contribution claim. First, Grande's assertion that its own activism was the sole or primary motivation behind the Debtor's revisions to its plan proposals is not supported by the history of the case. Although Grande was an active creditor, several other creditors and the Assistant U.S. Trustee also filed and actively pursued objections to the Debtor's present and prior disclosure statements and proposed plans. Grande simply cannot take sole or even primary credit for the Debtor's plan.

Recent developments further weaken Grande's claim of a substantial contribution. At the time of hearing, the Debtor had filed a Third Amended Disclosure Statement and Plan of Reorganization. Several creditors objected to the Third Amended Disclosure Statement, *including Grande*. The Debtor has now proposed a Fourth Amended Disclosure Statement and Plan of Reorganization, which also has met with objections. Any assertion of a substantial contribution in connection with the proposal of a confirmable, consensual plan is at best premature.

Second, Grande's earlier objections to the Debtor's disclosure statements and proposed plans were primarily directed towards the Debtor's classification and treatment of Grande, a judgment creditor, with unsecured creditors, and the proposed distribution on account of Grande's claim. Grande's involvement in disclosure and plan objections was motivated primarily by protection of Grande's own interests. Any benefit to other creditors or to the estate generally was merely incidental, and does not entitle Grande to an administrative expense claim for a substantial contribution. *See In re Labor Finders Int'l, Inc.*, 179 B.R. 340 (Bankr.S.D.Fla.1995) (no entitlement to administrative expense where creditor's efforts with regard to debtor's plan were intended predominantly to protect and advance its own interests and not other unsecured creditors, and did not provide direct, significant or demonstrable benefit); *see also In re Diberto*, 164 B.R. 1 (Bankr.D.N.H.1993) (creditors whose successful objection to plan was primarily self-motivated and only resulted in incidental benefit to other creditors not entitled to substantial contribution claim); *In re F.E. Frederick Enterprises, Inc.*, 146 B.R. 360 (Bankr.W.D.Pa.1992) (unsecured creditors' efforts in obtaining modification of plan, which provided only incidental or indirect benefit to estate or creditors as a whole, are not sufficient ground for substantial contribution claim).

Accordingly, the Court finds that Grande has not established that its activities constituted a "substantial contribution" in this case that would entitle it to reimbursement of its fees and expenses as an administrative expense under 11 U.S.C. § 503.

### CONCLUSION

For the reasons discussed above, the Court finds that Grande is not entitled to post-judgment attorneys fees and costs, either as part of its claim under *Fla.Stat.* § 57.115, 11 U.S.C. § 506(b), or *TranSouth*, or as an administrative expense under 11 U.S.C. § 503. A separate order will be entered in accordance with this opinion.