**STATE BANK OF SOUTHERN UTAH,**
a Utah Corporation, Appellant,

v.

**Kenneth A. RUSHTON, as**
**Trustee, Appellee.**

No. 2:96–CV–574.

United States District Court,
D. Utah,
Central Division.

March 13, 1997.

Steven T. Waterman, Steven W. Call, Valerie A. Longmire, Ray, Quinney & Nebeker, Salt Lake City, UT, for appellant.

Michael N. Zundel and Adam S. Affleck, Jardine, Linebaugh, Brown & Dunn, Salt Lake City, UT, for appellee.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This case is an appeal from a Bankruptcy Court order which denied attorneys' fees and costs to Appellant State Bank of Southern Utah ("State Bank"). Appellant is represented by Steven T. Waterman, Steven W. Call and Valerie A. Longmire of Ray, Quinney and Nebeker, and Appellee is represented by Michael N. Zundel and Adam S. Afleck of Jardine, Linebaugh, Brown and Dunn. The matter has been fully briefed and argued.

Now being fully advised, the court enters its memorandum decision and order.

## Background Facts

In 1978, State Bank loaned approximately $120,000 to John H. and Gloria K. Gledhill for the construction of a service station in Sevier County. To secure the loan, the Gledhills gave State Bank a Note and a Trust Deed on their service station. The Note and Trust Deed both provided for an award of attorneys' fees and costs to cover collection expenses in the event of default. The Gledhills defaulted on the Note, and State Bank sued in state court to foreclose the Trust Deed and to collect the balance owing under the Note. In 1984 the Gledhills filed a petition for relief in the United States Bankruptcy Court for the District of Nevada. In 1990, the Bankruptcy Court dismissed the petition whereupon State Bank pursued its secured claim against the Gledhills in state court.

On April 28, 1992, the state court granted summary judgment in favor of State Bank for $172,448.55 and entered a *Judgment, Decree and Order of Foreclosure in State Bank of Southern Utah v. John Gledhill, et all,* Civil No. 10790 (6th Dist. Ct. Sevier County, State of Utah). Pursuant to the *Judgment, Decree and Order of Foreclosure,* a writ of execution issued to the Sheriff to sell the service station. The station was sold and the proceeds of sale were applied to reduce the judgment by $57,902.27. A deficiency judgment was granted and entered in favor of State Bank by the state court on June 23, 1992, in the total amount of $114,546.28. In proceedings in furtherance of the deficiency judgment, a foreclosure sale of property known as Big Rock Candy Mountain owned by the Gledhills was scheduled by State Bank, for September 30, 1992, at the Sevier County Courthouse. Two days before the sale was to occur, on September 28, 1992, the Gledhills filed a chapter 11 petition for relief in the United States Bankruptcy Court for the District of Utah, Case No. 92A–26263 (1992). State Bank filed a Motion to Dismiss or for Relief from Automatic Stay. The Bankruptcy Court granted State Bank's motion, the Gledhill's chapter 11 case was converted to a chapter 7, and State Bank began to prepare for sale of the property. Prior to the scheduled sale, the Bankruptcy Trustee successfully moved the Bankruptcy Court to reimpose the automatic stay, thereby precluding State Bank from foreclosing its judgment lien on the said Big Rock Candy Mountain property.

Eventually the Bankruptcy Court entered an order approving the sale of the said Sevier County property and other related property. The property sold for approximately $299,000, with the proviso that State Bank's judgment lien would attach to the sale proceeds. State Bank filed a proof of claim with the Bankruptcy Court for recovery of principal, interest, attorneys' fees and costs relating to the judicial foreclosure of the properties to which its judgment lien attached by virtue of the state court proceedings, and for fees and costs relating to its motion for relief from automatic stay and subsequent litigation. The Trustee in Bankruptcy objected to the attorneys' fees and costs of $64,245.03 sought by State Bank on grounds that no fees may be awarded to State Bank under section 11 U.S.C. § 506(b). The parties stipulated that the only issue to be decided is whether State Bank has a right to recover attorneys' fees and costs under section 506(b).

On April 26, 1996, the Bankruptcy Court held that State Bank was not entitled to an award of attorneys' fees, because State Bank's secured claim arising from its judgment lien was not consensual within the meaning of § 506(b) of the Bankruptcy Code, so that the recovery was limited to principal and interest.

## Standard of Review

Questions of statutory interpretation are subject to de novo review. *Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc.,* 933 F.2d 376, 388 (6th Cir.), *cert. denied,* 502 U.S. 982, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991). A district court reviews a bankruptcy court's legal findings de novo and factual findings for clear error. *Phillips v. White (In re White),* 25 F.3d 931, 933 (10th Cir.1994); *In re Lazar,* 83 F.3d 306, 308 (9th Cir.1996).

The issue presented on this appeal is whether under 11 U.S.C. § 506(b) the April

28, 1992 *Judgment, Decree and Order of Foreclosure* constitutes a consensual agreement, thus entitling it to attorneys' fees and costs incurred subsequent to entry of that judgment.

## I.

### Federal Bankruptcy Code in re Award of Attorneys' Fees and Costs for Over Secured Claims.

Section 506(b) of the Bankruptcy Code provides:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is *greater than the amount of such claim*, there shall be allowed to the holder of such claim, interest on such claim, *and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.*

11 U.S.C. § 506(b) (1993) (emphasis added).

Appellant State Bank argues that under the plain and ordinary meaning of the statute it should receive an award of attorneys' fees and costs because State Bank is an *oversecured creditor* and the *underlying agreement* under which State Bank's *claim arose* provided for an award of attorneys' fees. Appellant submits that it was an over-secured creditor because the undisputed facts show that the property exclusive of the Trust Deed collateral encumbered by State Bank's judgment lien was worth more than the balance of the original judgment owing to State Bank. The property sold for approximately $300,000, and the claim owing to State Bank was approximately $212,000.

Appellant asserts that "under the agreement" in § 506(b) means anything which could qualify to establish a security interest such as the *Judgment, Decree and Order of Foreclosure*, and the Note and Trust Deed, rather than a specific security agreement which creates a consensual lien. Appellant next argues that under § 506(b), the word "claim," defined in Bankruptcy Code § 101(5)(A) as a "right to payment,"[1] means any right to payment, whether that right is secured or unsecured. Coupling this reading of § 506(b) with express statements providing for attorneys' fees in the original Note,[2] Trust Deed[3] and the original *Judgment, Decree and Order of Foreclosure*[4] entered by the State Court, Appellant asserts that its claim arose under an agreement expressly providing for attorneys' fees.

Appellee reads § 506(b) to allow attorneys' fees only pursuant to a consensual lien created by a security agreement expressly providing for such. Appellee insists that no such consensual lien was contemplated as to property not pledged as collateral in the Trust Deed relating to the original loan, and that any lien upon property not set forth in the

---

1. (5) "claim" means—

    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; . . . .

    11 U.S.C. § 101(5)(A) (1993).

2. The Note dated July 22, 1976, states that "[t]he undersigned shall pay all expenses of any nature, whether incurred in or out of court, and whether incurred before or after this Note shall become due at its maturity date or otherwise, including but not limited to reasonable attorney's fees and costs, which Holder may deem necessary or proper in connection with the satisfaction of the Indebtedness or the administration, supervision, preservation, protection of (including, but not limited to, the maintenance of adequate insurance) or the realization upon the Collateral."

3. The Trust Deed dated July 22, 1976, states that "[u]pon the occurrence of any default hereunder, Beneficiary shall have the option to declare all sums secured hereby immediately due and payable and foreclose this Trust Deed in the manner provided by law for the foreclosure of mortgages on real property and Beneficiary shall be entitled to recover in such proceedings all costs and expenses incident thereto, including a reasonable attorney's fee in such amount as shall be fixed by the court."

4. The *Judgment, Decree and Order of Foreclosure* provides:

    The Defendants John Herbert Gledhill and Gloria Kay Gledhill are jointly and severally indebted to the Plaintiff, State Bank of Southern Utah, in the total amount of $172, 448.55 as of April 15, 1992, pursuant to those two notes dated July 22, 1976, and December 18, 1978, respectively, plus interest on the principle balance at the contract rate from and after this date until paid, and plus subsequently accruing costs and attorney's fees.

Trust Deed was created only by operation of law and not by agreement.

In *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the Supreme Court was called upon to determine whether § 506(b) entitles a creditor to receive post-petition interest on a nonconsensual over-secured claim which had been allowed in a bankruptcy proceeding. The Court noted that there are two types of secured claims: (1) voluntary (or consensual) secured claims, created by agreement between the debtor and the creditor where the creditor's interest or lien on the debtor's property is called a "security interest" in 11 U.S.C. § 101(51) (1993); and (2) involuntary secured claims, such as a judicial or statutory lien, under 11 U.S.C. §§ 101(36) and (53) (1993), which claims are fixed by operation of law or statute and do not require the consent of the debtor. *Ron Pair,* 489 U.S. at 240, 109 S.Ct. at 1029–30. The Supreme Court ruled that in the Bankruptcy Code there is no distinction between the two types of claims, and held that § 506(b) authorizes payment of post-petition *interest* on a nonconsensual over-secured claim.[5] *Id.* at 243, 109 S.Ct. at 1031. The Court began its analysis with the language and grammatical structure of § 506(b), stating that the "natural" reading of the phrase "there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose," entitles the holder of the over secured claim post-petition interest. *Id.* at 241, 109 S.Ct. at 1030. The Supreme Court carefully restricted the scope of its analysis to only the issue of post-petition interest, declaring that it was deciding a "narrow statutory issue." *Id.* at 237, 109 S.Ct. at 1028.

The Supreme Court went on the make clear that when a secured claim is *created pursuant to an agreement* the statute authorizes reasonable fees, costs, and charges "provided for in that agreement." *Id.* at 241, 109 S.Ct. at 1030. The Court distinguish post-petition interest from other costs:

"*Recovery of post-petition interest is unqualified.* Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, *in the absence of an agreement, post-petition interest is the only added recovery available.*"

*Id.* (emphasis added).

Parsing the statute grammatically, the Supreme Court noted that "interest on such claim" is set aside by commas, and separated from "fees, costs, and charges" by the conjunctive words "and any." The Court ruled that the phrase "interest on such claim" stands independent of "fees, costs, and charges" and that "provided for under agreement" modifies only "fees, costs, and charges." *Id.* at 241–42, 109 S.Ct. at 1030–31. Furthermore, the Court concluded that allowing post-petition interest on nonconsensual over secured liens does not contravene the intent of the framers of the Code, and is not contrary to legislative history. In addition, the Court found no significant reason why Congress would have intended, or that any policy reason would compel, that the two types of secured claims should be treated differently in allowing post-petition interest. *Id.* at 242–43, 109 S.Ct. at 1030–31.[6]

Appellant cites footnote 5 of *Ron Pair* which rejects the Court of Appeals view that § 506(b) is operative only in regard to consensual liens.[7] While the language of foot-

---

5. Prior to the enactment of the Bankruptcy Code in 1978, several Courts of Appeals recognized a distinction between the consensual and nonconsensual secured claims for purposes of determining post-petition interest. *See Ron Pair,* 489 U.S. at 237–238, 109 S.Ct. at 1028.

6. The dissent in *Ron Pair,* authored by Justice O'Connor and joined by three Justices, argued that no post-petition interest or other post-petition recovery should be allowed for nonconsensual liens. All the Justices of the Supreme Court therefore accept the majority's basic premise that

neither consensual nor nonconsensual lienholders are entitled to post-petition additions such as fees, costs, and charges because "in the absence of an agreement, post-petition interest is the only added recovery available." *Id.* at 241, 109 S.Ct. at 1030; *See also, In re Brentwood Outpatient, Ltd.,* 43 F.3d 256, 261 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1824, 131 L.Ed.2d 745 (1995).

7. Footnote 5 states that:
   It seems to us that the interpretation adopted by the Court of Appeals in this case not only

note 5 could conceivably support Appellant's claim, the majority begins its opinion by making it clear that the "narrow statutory issue" which it decided only applies to post-petition interest. *Id.* at 237, 109 S.Ct. at 1028. Appellant's argument has been rejected by several bankruptcy courts and Courts of Appeal. In *In re Vulpetti,* 182 B.R. 923 (Bankr.S.D.Fla.1995), the creditor unsuccessfully argued that since it held a claim secured by property greater than the amount of its claim, its secured claim should include attorneys' fees and costs as well as interest under Section 506(b). The *Vulpetti* court analyzed *Ron Pair* and held that " § 506(b) does not provide an avenue for recovery of postpetition attorneys fees and costs for a creditor whose secured claim arises by operation of law rather than pursuant to a consensual security agreement. This result does not change simply because the agreement underlying the judgment provided for attorneys fees." *Id.* at 927. The Fifth Circuit in *In re Pointer,* 952 F.2d 82 (5th Cir.1992), citing *Ron Pair,* held that a party with a nonconsensual lien, such as a tax lien arising through operation of law, is not a creditor with a voluntary secured claim, and thus is not entitled to post-petition penalties, fees, and costs for unpaid ad valorem taxes as part of a secured claim. *Id.* at 88. The Second Circuit has ruled similarly:

> *Ron Pair* also answers the question whether, under § 506(b), the county is entitled to priority on its penalty claims. Under the bankruptcy code, "[r]ecovery of fees, costs, and charges" is allowed "only if they are reasonable and provided for in the agreement under which the claims arose." In the absence of such an agreement, fees and costs are not recoverable. *Ron Pair,*

489 U.S. at 240–42, 109 S.Ct. at 1030. Here, the claims for penalties arose, not under an agreement between the parties, but by operation of law under the tax act. *In re Parr Meadows Racing Ass'n, Inc.,* 880 F.2d 1540, 1549 (2d Cir.1989) (citing *Ron Pair,* 489 U.S. at 240–42, 109 S.Ct. at 1030), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990). In *In re Brentwood Outpatient, Ltd.,* 43 F.3d 256 (6th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1824, 131 L.Ed.2d 745 (1995), the Sixth Circuit disallowed a county's claim under § 506(b) in a Chapter 11 case for statutory penalties, fees and costs in connection with its over secured claim for real property taxes affirming the bankruptcy court's conclusion that "*Ron Pair* requires disallowance of Williamson County's claim for post-petition fees and costs because Williamson County's claim arose by operation of law and not by agreement." *Id.* at 262; *See also, In re California Wholesale Elec. Co.,* 121 B.R. 360, 366–67 (Bankr.C.D.Cal.1990).

Based on the foregoing, this court rules that 11 U. SC. § 506(b) allows an over-secured party to recover only post-petition attorneys' fees, costs and charges which are provided in an agreement creating a consensual security interest or lien.

It now becomes necessary to determine whether a consensual agreement within the meaning of § 506(b) exists in this case.

## II

### Utah Law in re Judicially Created Liens upon Real Property
#### *Judgment Lien Statute*

Utah Code Aim. § 78–22–1(2), entitled "Judgment as Lien upon Real Property," provides:

---

requires that the statutory language be read in an unnatural way, but that it is inconsistent with the remainder of § 506 and with terminology used throughout the code. Adopting the Court of Appeals' view would mean that § 506(b) is operative only in regard to consensual liens, i.e., that only a holder of an oversecured claim arising from an agreement is entitled to any added recovery. But the other portions of § 506 make no distinction between consensual and nonconsensual liens. Moreover, had Congress intended § 506(b) to apply only to consensual liens, it would have clarified its intent by using the specific phrase,

"security interest," which the Code employs to refer to liens created by agreement. 11 U.S.C. § 101(45) (1982 ed., Supp. IV). When Congress wanted to restrict the application of a particular provision of the Code to such liens, it used the term "security interest." *See, e.g.,* 11 U.S.C. §§ 362(b)(12) and (13), 363(a), 547(c)(3)-(5), 552, 752(c), 1110(a), 1168(a), 1322(b)(2) (1982 ed., Supp. IV).

The former 11 U.S.C. § 101(45) cited by the Supreme Court in *Ron Pair* is now 11 U.S.C. § 101(51) (1993). The other statutory sections cited in Footnote 5 refer to the present sections.

(2) Except as limited by Subsection (4) [dealing with small claims judgments], the entry of judgment by a district court is a lien upon the real property of the judgment debtor, not exempt from execution, owned or acquired during the existence of the judgment, located in the county in which the judgment is entered.

Utah Code Ann. § 78–22–1(2) (1996).

After the Gledhills defaulted on the original loan, a state court in Utah awarded judgment in favor of State Bank for attorneys fees and costs in compliance with Utah law. The *Judgment, Decree and Order of Foreclosure,* which was entered on April 28, 1992, provided:

> The defendants John Herbert Gledhill and Gloria Kay Gledhill are jointly and severally indebted to the plaintiff, State Bank of Southern Utah, in the total amount of $172,448.55 as of April 15, 1992, pursuant to those two notes dated July 22, 1976 and December 18, 1978, respectively, plus interest on the principal balance at the contract rate from and after this date until paid, and plus subsequently accruing costs and attorney's fees.

■ It is apparent that a lien in favor of Appellant upon all real property of the Appellee as judgment debtor was created by the *Judgment, Decree and Order of Foreclosure* as provided in § 78–22–1(2). This embraced the Big Rock Candy Mountain property and all other realty owned by the Gledhills which was specifically pledged as collateral for the original loan. However, the lien thus created comes into being by operation of law.[8]

### *Mortgage Foreclosure Statute— "One Action Rule"*

Utah Code Ann. § 78–37–1 provides:

> There can be but one action for the recovery of any debt or the enforcement of any right secured solely by mortgage upon real estate which action must be in accordance

with the provisions of this chapter. Judgment shall be given adjudging the amount due, with costs and disbursements, and the sale of mortgaged property, or some part thereof, to satisfy said amount and accruing costs, and directing the sheriff to proceed and sell the same according to the provisions of law relating to sales on execution, and a special execution or order of sale shall be issued for that purpose.

Utah Code Ann. § 78–37–1 (1996).

■ Two steps, i.e. the entry of two judgments, are required of a mortgage creditor in obtaining execution on real property of a judgment debtor, which property was not mortgaged or pledged as collateral for the debt or loan in question. The first step requires the mortgage creditor to commence an action and thereby obtain an "original" judgment and decree of foreclosure against the mortgaged property, establishing or "adjudging" the amount due and ordering the sale of the that property. Utah Code Ann. § 78–37–1 (1996). Upon entry of the "original" judgment, under § 78–22–1(2), a judicial lien attaches to all other real property of the debtor. The second step requires the mortgage creditor to obtain a deficiency judgment against the mortgage debtor for amounts remaining due after the sale of the mortgaged property. In this regard, Utah Code Ann. § 78–37–2 provides:

> If it appears from the return of the officer making the sale that the proceeds are insufficient and a balance still remains due, judgment therefor must then be docketed by the clerk and execution may be issued for such balance as in other cases; but no general execution shall issue until after the sale of the mortgaged property and the application of the amount realized as aforesaid.

*Utah Code Ann.* § 78–37–2 (1996). This statute does not create the lien; it merely provides for executing upon it.[9] Section 78–

8. Because "subsequently accruing" costs and attorney's fees are awarded in the *Judgment, Decree and Order of Foreclosure,* appellant argues that the attorney's fees and costs associated with the deficiency judgment are ordered by the court. However, there could be no such lien but for the operation of the Judgment Lien Statute.

9. It appears that years ago, the Utah Supreme Court imposed the judicial lien at the docketing of the deficiency judgment. *See Donaldson v. Grant,* 15 Utah 231, 49 P. 779, 781 (1897) (explaining procedures under mortgage foreclosure statute that execution proceedings including the creation of a judgment lien are dependent upon

37-2 restricts the right to execute on such property not covered by the mortgage until "after the sale of the mortgage property and the application of the amount realized as aforesaid." *Id.*[10] The "one action" statute does not create a lien or perpetuate and establish in future proceedings a lien upon non-mortgaged property because of the existence of a consensual lien imposed upon the original collateral for the loan. Rather, the lien which attaches to the non-mortgaged property comes into being by operation of Utah's judgment lien statute. The judicial lien thus created is not eliminated, subsumed or merged by the procedure set forth in Utah's aforesaid mortgage foreclosure statutes.[11]

### Nature of Lien Upon Non-mortgaged Property

The final inquiry is whether the lien rights in property which was not collateral for the original loan in this case were created by consent or operation of law within the meaning of the Federal Bankruptcy Code as interpreted by the Supreme Court in *Ron Pair*. This court disagrees with Appellant's assertion that the judicial lien imposed by the *Judgment, Decree and Order of Foreclosure* is the consensual kind which, under § 506(b), would support awarding attorneys fees and costs in favor of appellant. Although the foreclosure judgment imposing the judicial lien included language granting Appellant accruing attorneys' fees and costs,[12] the judicial lien thus created on property which was not pledged as collateral for the loan nevertheless was involuntary and nonconsensual. Accordingly, this court rules that the judicial lien concerning the nonmortgaged property was not created by or through the "agreement" between the creditor and the debtor, but by operation of law. This kind of secured claim does not require the consent of

the entry of a deficiency judgment: "[I]f it appears from the return of the officer making the sale that the proceeds are insufficient, a judgment may be docketed for the balance against the defendant personally liable for the debt; and *that it shall become a lien on the judgment debtor,* as in other cases, and that an execution may issue thereon.") (emphasis added) (interpreting Section 3460, Comp. Laws Utah 1888).

Section 3460 was later split into two sections, which more closely tracks the present statutory law:

Utah Comp Law 1907, § 3498 provided:
There can be but one action for the recovery of any debt of the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter. Judgment shall be given adjudging the amount due, with costs and disbursements, and the sale of the mortgage property, or some part thereof, to satisfy said amount, and directing the sheriff to proceed and sell the same according to the provisions of law relating to sales on execution. Such judgment may be docketed at any time.

Utah Comp Laws 1907, § 3499 provided:
If it appears from the return of the officer making the sale that the proceeds are insufficient, and a balance still remains due, execution may be issued for such balance as in other cases; but no such execution shall issue until after the sale of the mortgaged property and the application of the amount realized as aforesaid.

*See also, Hammond v. Wall,* 51 Utah 464, 171 P. 148, 150 (1917) (interpreting Utah Comp. Laws 1907, §§ 3498, 3499).

Under Utah's presently existing judgment lien statute, § 78–22–1 of the Utah Code, the judicial lien is imposed at the time of *the original* judgment rather then waiting until the deficiency judgment is entered.

10. This is one point on which this court disagrees with Judge Allen of the bankruptcy court. Judge Allen held that the lien by State Bank is based on the deficiency judgment, and was not created by the decree of foreclosure. Transcript of Hearing (April 29, 1996). This court concludes that the decree of foreclosure did impose a lien on all the real property of the judgment debtor under Utah Code Ann. § 78–22–1(2).

11. In *Bank of Ephraim v. Davis,* 581 P.2d 1001, 1004 (Utah 1978), a writ of attachment was issued prior to the foreclosure sale. The writ was quashed by the trial court because the court held that personal liability of the mortgagor can be imposed only after a court ordered sale of the property; and, if after sale, a deficiency appears. *See also, First Nat'l Bank of Salt Lake City v. Haymond,* 89 Utah 151, 57 P.2d 1401, 1404 (1936).

12. The concluding paragraph of *the Judgment, Decree and Order of Foreclosure* states:

This judgment shall be reduced, without further action, by the amount of the proceeds received, after first paying the costs of the sale, and the Plaintiffs shall *thereafter,* without further action, have *judgment and execution in its favor and against the Defendants Gledhill, jointly and severally, for any deficiency remaining.* (Emphasis added). *See supra* footnote 8.

the debtor. *Ron Pair*, 489 U.S. at 240, 109 S.Ct. at 1029–30.[13]

Based on the foregoing, this court holds that under § 506(b) of the Bankruptcy Code, no attorneys fees, costs or charges other than post-petition interest could be awarded by reason of the original Judgment, Decree and Order of Foreclosure. Accordingly, it is

ORDERED that the Bankruptcy Court's determination in allowing post-petition interest and disallowing attorneys' fees and costs is AFFIRMED.

Counsel for Appellee is directed to prepare and lodge with the Court within 30 days a form of judgment consistent with this Memorandum Decision and Order, after first complying with local rule 206(b).

---

**13.** "[I]nvoluntary secured claims, such as a judicial or statutory lien, ... are fixed by operation of law and do not require the consent of the debtor." *Ron Pair*, 489 U.S. at 240, 109 S.Ct. at 1029–30.