**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 20 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

In re: JOHN H. GLEDHILL; GLORIA
K. GLEDHILL, dba BIG ROCK
CANDY MOUNTAIN,

    Debtor,

_____

KENNETH A. RUSHTON, Trustee

    Appellee,

       v.

STATE BANK OF SOUTHERN
UTAH,

    Appellant.

No. 97-4131

---

APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 96-CV-574-G)

---

Steven T. Waterman and Steven W. Call, of Ray, Quinney & Nebeker, Salt Lake
City, Utah, for the appellant.

Adam S. Affleck (Michael N. Zundel, with him on the brief), of Jardine
Linebaugh & Dunn, Salt Lake City, Utah, for the appellee.

---

Before **BRISCOE**, **McKAY**, and **LUCERO**, Circuit Judges.

_____

**BRISCOE**, Circuit Judge.

_____

State Bank of Southern Utah appeals the district court's ruling denying the

Bank's request for post-petition attorney fees and costs under 11 U.S.C. § 506(b).

The district court held post-petition attorney fees and costs could be recovered

under § 506(b) only if a consensual agreement underlying the allowed secured

claim expressly provided for such recovery. We affirm.

In 1978, the Bank loaned $120,000 to John H. Gledhill and Gloria K.

Gledhill for construction of a service station in Sevier County, Utah. The loan

was secured by a note and trust deed on the property. Both the note and the deed

provided for attorney fees and costs to cover collection expenses if the Gledhills

defaulted. The Gledhills defaulted on the note and the Bank sued in Utah state

court to foreclose the deed and collect the unpaid balance. On April 28, 1992, the

state court entered summary judgment (the foreclosure judgment) in favor of the

Bank in the amount of $172,448.55 and awarded the Bank its attorney fees and

costs. Specifically, the judgment provided:

> The Defendants John Herbert Gledhill and Gloria Kay Gledhill are
> jointly and severally indebted to the Plaintiff, State Bank of Southern
> Utah, in the total amount of $172,448.55 as of April 15, 1992,
> pursuant to those two notes dated July 22, 1976, and December 18,
> 1978, respectively, plus interest on the [principal] balance at the
> contract rate from and after this date until paid, and plus

subsequently accruing costs and attorney's fees.

State Bank of Southern Utah v. Rushton, 207 B.R. 721, 723 (Bankr.D.Utah 1997). Thereafter, the service station property was sold for $57,907.27 and the proceeds were applied to the judgment. As the sale proceeds were less than the balance due, the state court entered a deficiency judgment for the remainder.

The Bank enforced its judgment lien arising from its deficiency judgment by foreclosing on other property (known as Big Rock Candy Mountain) owned by the Gledhills. However, the Gledhills filed for bankruptcy shortly before the sale was to occur. During the course of the bankruptcy proceedings, the Big Rock Candy Mountain property was sold for $299,000. The Bank had filed a proof of claim in the Gledhills' bankruptcy case, seeking recovery of the remaining principal and accrued interest under the deficiency judgment plus $64,245.03 in post-petition attorney fees and costs to the extent recoverable under 11 U.S.C. § 506(b).[1] Kenneth A. Rushton, the appointed trustee, objected to the Bank's claim on the ground that the Bank was not entitled to any fees and costs under § 506(b). The bankruptcy court agreed and only awarded the principal and interest due under the deficiency judgment. The district court affirmed the bankruptcy court,

---

[1] The Bank was an oversecured creditor because the Big Rock Candy Mountain property was sold for an amount greater than the amount of the Bank's "allowed secured claim." The Trustee does not challenge the Bank's oversecured status.

holding although the Bank was an oversecured creditor, it was not entitled to post-petition fees and costs because "the lien concerning the nonmortgaged property [Big Rock Candy Mountain] was not created by or through the 'agreement' between the creditor or debtor, but by operation of law." See State Bank of Southern Utah, 207 B.R. at 727. The court interpreted § 506(b) as allowing "an over-secured party to recover only post-petition attorneys' fees, costs and charges which are provided in an agreement creating a consensual security interest or lien." Id. at 725.

The district court's interpretation of a statute is a question of law subject to de novo review by this court. See F.D.I.C. v. Canfield, 967 F.2d 443, 445 (10th Cir. 1992). When an issue concerns a question of law, the standard of review on appeal is the same as that applied by the trial court in making its initial ruling. See United States v. Frederick, 897 F.2d 490, 491 (10th Cir. 1990). Thus, we afford no deference to the district court's opinion. See Robinson v. Missouri Pacific R.R. Co., 16 F.3d 1083, 1092 (10th Cir. 1994).

In general, the amount of a creditor's bankruptcy claim is measured "as of the date of the filing of the petition." 11 U.S.C. § 502(b). Thus, holders of an oversecured consensual claim or an oversecured nonconsensual claim are entitled to interest, penalties, attorney fees, and costs that accrue *before* the debtor's bankruptcy petition is filed. See In re Brentwood Outpatient, Ltd., 43 F.3d 256,

-4-

263 (6th Cir. 1994). Interest, fees, costs, and charges that accrue *after* the petition has been filed, or post-petition, are permitted only if authorized under 11 U.S.C. § 506(b), which provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The Bank contends the district court's decision is contrary to the plain language of § 506(b) and to the decision in United States v. Ron Pair Enters., Inc., 489 U.S. 235 (1989). The Bank argues § 506(b) makes no distinction between consensual and nonconsensual claims, but purports to allow recovery of "fees, costs, or charges" if "provided for under the agreement under which such claim arose." The Bank argues the "agreement" that controls here is the note, the trust deed, and the April 28, 1992, state court judgment, all of which provide for recovery of fees and costs.

Section 506(b) refers to an "allowed secured claim." We must first identify the "allowed secured claim" which is at issue here. An "allowed secured claim" is simply "an allowed claim that qualifies as a secured claim as provided under section 506(a)." 4 Collier on Bankruptcy, ¶ 506.04[1], at 506-105 (15th ed. 1998). The "allowed secured claim" is the specific claim presented to the bankruptcy court for payment. The Bank directs us to the underlying note and

trust deed on the service station, which contained an agreement that attorney fees and costs could be recovered. Those agreements are irrelevant to the Bank's current claim. In accordance with the state court foreclosure judgment, the service station property was sold and the proceeds were applied to reduce the amount owed to the Bank.    See Utah Code Ann. §§ 78-37-1 & 2. At that point, the Bank's security interest that arose under the note and trust deed was exhausted. Pursuant to Utah law, if a deficiency then exists, a deficiency judgment is entered to reflect the deficiency amount and a lien arises which is enforceable against other real property.    See Utah Code Ann. § 78-22-1(2). It is the Bank's judgment lien on the Gledhills' remaining property, which essentially consisted only of the Big Rock Candy Mountain property, that is the "allowed secured claim" at issue in these bankruptcy proceedings.

Having identified the "allowed secured claim" presented to the bankruptcy court, we next determine whether § 506(b) allows both creditors having oversecured consensual claims and creditors having oversecured nonconsensual claims to recover post-petition attorney fees and costs. In        Ron Pair , the Court held a creditor is entitled to receive post-petition interest on a nonconsensual oversecured claim under § 506(b). The Bank argues the Court's interpretation in Ron Pair implies that an oversecured creditor with a nonconsensual claim may, under § 506(b), recover not only interest but also fees and costs. The Bank relies

-6-

on a footnote in Ron Pair : "[H]ad Congress intended § 506(b) to apply only to consensual liens, it would have clarified its intent by using the specific phrase 'security interest,' which the Code employs to refer to liens created by agreement." Id. at 242 n.5.

A close reading of Ron Pair reveals the Court took great pains to limit its holding to the "narrow statutory issue" before it.

> The relevant phrase in § 506(b) is: "[T]here shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." "Such claim" refers to an oversecured claim. The natural reading of the phrase entitles the holder of an oversecured claim to postpetition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement. Recovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available.
> . . . The phrase "interest on such claim" is set aside by commas, and separated from the reference to fees, costs, and charges by the conjunctive words "and any." As a result, the phrase "interest on such claim" stands independent of the language that follows. "[I]nterest on such claim" is not part of the list made up of "fees, costs, or charges," nor is it joined to the following clause so that the final "provided for under the agreement" modifies it as well. . . . The language and punctuation Congress used cannot be read in any other way. By the plain language of the statute, the two types of recovery are distinct.

See id. at 240-42. Thus, the court not only expressly differentiated "interest" from "fees, costs, or charges," it cautioned that fees, costs, and charges could not

-7-

be awarded in the absence of a consensual agreement expressly providing for them. As noted in the dissent, "[e]ven under the Court's interpretation, 'reasonable fees, costs, or charges,' can only be awarded if provided for in a consensual lien." Id. at 251 (O'Connor, J., dissenting). Hence, the Court was in agreement that an underlying consensual agreement must exist before an oversecured creditor is entitled to attorney fees and costs under § 506(b).

We are not alone in reading Ron Pair as limiting awards of fees and costs under § 506(b) to oversecured creditors whose fees and costs were provided for in an agreement. See Brentwood Outpatient, 43 F.3d at 259-60; In re Pointer, 952 F.2d 82, 89 (5th Cir. 1992) ("All creditors can recover interest on an oversecured claim, but only creditors who have voluntary secured claims can recover penalties, fees, and costs."); In re Parr Meadows Racing Ass'n, 880 F.2d 1540, 1549 (2d Cir. 1989); In re Tricca, 196 B.R. 214, 218 (Bankr.D.Mass. 1996) ("The overwhelming majority of cases have held that a secured creditor is not entitled to recover legal fees as part of its secured claim when the claim for fees and costs arises solely by operation of law."); In re Vulpetti, 182 B.R. 923, 927 (Bankr.S.D. Fla. 1995) (Section "506(b) does not provide an avenue for recovery of postpetition attorneys fees and costs for a creditor whose secured claim arises by operation of law rather than pursuant to a consensual security agreement.").

The Bank notes many of the above cases are not persuasive here because

they involved tax liens or other liens created exclusively by statute. However, the significant point is not the means by which the liens arose, but the manner in which those liens, as examples of nonconsensual claims, were treated under § 506(b). Tellingly, despite its protestations, the Bank has not directed us to any post-<u>Ron Pair</u> decision awarding fees and costs to an oversecured creditor holding a nonconsensual claim. Moreover, at least one court has denied fees and costs to an oversecured creditor whose secured claim arose from a judgment lien. <u>See</u> <u>Vulpetti</u>, 182 B.R. at 927. <u>Vulpetti</u> involved a guaranty agreement between the debtor and creditor that provided for attorney fees and costs in the event of collection or enforcement of the guaranty. Litigation for collection became necessary and summary judgment was entered in favor of the creditor. A separate judgment awarded attorney fees and costs to the creditor. Under Florida law, these judgments gave rise to judgment liens against the debtor's real property. After the debtor petitioned for bankruptcy relief, the oversecured creditor sought payment of the amounts owed, including fees and costs. The bankruptcy court denied the request for fees and costs:

> The problem with [creditor's] argument is that the "allowed secured claim" must arise from "the agreement" for § 506(b) to apply. If the claim is secured only because of a non-consensual lien, such as the judgment lien in this case, fees are not recoverable under § 506(b).
> . . . [U]nder the statute, the lien must arise from the agreement.
> Section 506(b) does not apply where, as here, the secured claim arises from a non-consensual lien.

> . . . .
>
> . . . This result does not change simply because the agreement
> underlying the judgment provided for attorneys fees.

Id. at 926-27.

The Court strongly intimated in Ron Pair that creditors holding oversecured nonconsensual claims may not recover attorney fees, costs, and other charges. This rule -- which follows from the plain language of the statute, as well as legislative history -- has been uniformly applied. We therefore hold that only creditors having oversecured consensual claims may recover attorney fees, costs, or other charges under § 506(b).

Reduced to its essentials, the Bank asserts entitlement to fees and costs because (1) the April 28, 1992, state court judgment provided for recovery of fees and costs, and (2) the Big Rock Candy Mountain property sold for an amount greater than the Bank's secured claim. The judgment lien on the Big Rock Candy Mountain property, however, did not arise from an agreement that provided for an award of attorney fees in the event of litigation. The only property the Gledhills pledged as collateral in any agreement with the Bank was the service station, which was sold before bankruptcy proceedings were initiated. Upon the sale of the service station property, the Bank received, for better or worse, the benefit of its bargain. Like all creditors, the Bank bore the risk of collateral depreciation. See 4 Collier on Bankruptcy, ¶ 506.02, at 506-8. The Gledhills never entered into

an agreement that included a provision for attorney fees in which they pledged the Big Rock Candy Mountain property as security to the Bank. Thus, the judgment lien presented to the bankruptcy court as the "allowed secured claim" arose not by agreement but by operation of law, and gave rise only to a nonconsensual claim. See Ron Pair, 489 U.S. at 240 (defining "voluntary (or consensual) secured claims" as an "agreement between the debtor and the creditor," and "involuntary secured claims, such as a judicial or statutory lien," as liens fixed by operation of law without consent of debtor); Brentwood Outpatient, 43 F.3d at 259. Consequently, the Bank is not entitled to attorney fees, costs, or other post-petition charges. See 4 Collier on Bankruptcy, ¶ 506.04[3], at 506-116-117 ("[F]ees, costs and charges are not allowable under section 506(b), notwithstanding the existence of oversecurity, in the absence of a contractual entitlement thereto.").

AFFIRMED.