**SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**Wilbur SIEBERT and Czarena Siebert, Appellees.**

**No. 01–00–00892–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 6, 2003.

Pankaj R. Parmar, Linebarger Goggan Blair Pena & Sampson, L.L.P., Owen M. Sonik, Perdue Brandon Fielder Collins & Mott, L.L.P., Hal R. Gordon, Gordon & Gordon, Houston, for appellant.

Victor N. Makris, Houston, for appellees.

Panel consists of Chief Justice RADACK and Justice DUGGAN *.

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## OPINION

LEE DUGGAN, JR., Justice (Retired).

Appellant, Spring Branch Independent School District ("Spring Branch"), appeals the trial court's judgment in a suit for delinquent property taxes against appellees, Wilbur and Czarena Siebert ("the Sieberts"). The judgment (1) dismissed without prejudice the claims for taxes, penalties, and interest for tax years 1996 and 1997 of several taxing units, including Spring Branch, (2) granted Spring Branch its 1998 taxes, penalties, and interest due in June 1999, and (3) denied Spring Branch's claim for attorney's fees for the 1998 tax year. Spring Branch asserts 10 issues on appeal. We affirm.

### Facts and Procedural History

Spring Branch and seven intervenor tax entities [1] sued the Sieberts to collect taxes levied for tax years 1996, 1997, and 1998 on their tract of approximately 1.98 acres in the City of Hunter's Creek Village.

In 1989, Harris County Appraisal District ("HCAD") records described the property in question as Lot 9, Saddlewood Estates. In 1995, the Sieberts recorded a plot subdividing the tract into three lots, described as "Saddlewood Estates Lot 9 and Creekview Lots 1 and 2, Being a Replat of Saddlewood Estates Lot 9." However, HCAD described the three replatted lots as "Lots 1, 2, and 9, Block 1, Saddlewood Estates R/P/." [2] Spring Branch and the other taxing units issued

tax bills to the Sieberts for the three subdivided lots.

In 1995, the neighborhood property owners' association sued the Sieberts to contest the replat and obtained a temporary injunction restraining them from developing or selling the property other than as a single lot. On April 28, 1998, the 125th District Court entered an agreed final judgment against the Sieberts, declaring the 1995 replat to be in violation of applicable deed restrictions and "of no force and effect." Nothing in the judgment expressly made the judgment retroactive or invalidated the 1996 or 1997 tax appraisals or tax bills.

Tax appraisals on the property listed, and tax statements for the property billed, *four* separate account numbers and descriptions. None of the statements referred to Creekview Lots 1 or 2.

On October 3, 1998, Spring Branch sued the Sieberts to collect 1996 and 1997 taxes, penalties, and interest due on Lot 9, Saddlewood Estates and Lots 1 and 2, Block 1, Saddlewood Estates. On October 20, 1998, the Sieberts paid all 1996 and 1997 taxes, penalties, and interest due on the account number and tax statement for Lot 9, Saddlewood Estates, but did not pay the tax statements for Lots 1 and 2, Block 1, Saddlewood Estates.

Later in 1998, HCAD re-combined the three lots, describing them as Lot 9, Saddlewood Estates. All taxing authorities issued new tax bills for 1998, using that

---

1. Intervening tax entities were The Memorial Villages Water Authority, the City of Hunter's Creek Village, Harris County, Harris County Education Department, The Port of Houston of Harris County Authority, Harris County Flood Control District, and Harris County Hospital District.

2. HCAD's representative testified that she did not believe that there was another Lot 1 or Lot 2, Block 1, Saddlewood Estates, and that

the reasons that HCAD described all three lots as "Saddlewood Estates R/P," changing the "Creekview" designation, were that HCAD "cannot assign one volume and page to two separate subdivision headers"; that the Sieberts had given part of their plat another name, "Creekview;" and that HCAD "chose the first name that was filed on the plat, which was Saddlewood Estates."

description. In early 1999, the Sieberts paid all taxing authorities except Spring Branch for 1998 taxes, penalties, and interest due on Lot 9, Saddlewood Estates. On March 8, 1999, Spring Branch sent the Sieberts a tax bill for 1998 taxes due on Lot 9, Saddlewood Estates, listing the penalty to be paid if payment was not made prior to July 1, 1999. On June 30, 1999, the Sieberts unconditionally tendered $9,351.51 to Spring Branch for all taxes, penalties, and interest due on Lot 9, Saddlewood Estates. Spring Branch rejected the Sieberts' tender, claiming that Spring Branch was additionally entitled to collect attorney's fees.

In September 1999, the case was tried to the district court's tax master, who found that Spring Branch (1) could not collect taxes for 1996 and 1997 on Lots 1 and 2, Block 1, Saddlewood Estates because the property had not been properly described in Spring Branch's tax bill and (2) could not recover attorney's fees for 1998 on Lot 9, Saddlewood Estates because the Sieberts had already tendered payment.

Spring Branch appealed *de novo* to the district court, which affirmed the tax master and further found that the taxing entities had adopted and imposed a penalty under Tax Code section 33.07 that was included in the tax bills the Sieberts had already paid. *See* Tex. Tax Code Ann. § 33.07 (Vernon 2002). All taxing authorities except Spring Branch have either dismissed this claims or settled with the Sieberts.

**Standard of Review**

The parties do not challenge the sufficiency of the evidence to support the trial court's findings of fact, but instead challenge its conclusions of law. A trial court's conclusions of law are not binding on this Court and are reviewed *de novo*. *In re*

*K.R.P.*, 80 S.W.3d 669, 674 (Tex.App.- Houston [1st Dist.] 2002, pet. denied).

**Property Description**

In its first five issues, Spring Branch contends that the trial court erred in denying it judgment and dismissing its suit for 1996 and 1997 taxes on Lots 1 and 2, Block 1, Saddlewood Estates because: (1) the appraisal records described the property in question with reasonable certainty; (2) the tax appraisals were not invalidated by the 1998 *ab initio* voidance of the 1995 replat; and (3) the Sieberts failed to protest the descriptions of the property administratively.

**A. Whether the Record Described the Property with Reasonable Certainty.**

█ In its first issue, Spring Branch asserts that its 1996 and 1997 tax bills provided "specific account numbers and cosmetic legal descriptions" sufficient to sustain a judgment for judicial foreclosure of tax liens and to impose personal liability against the Sieberts.

Spring Branch contends that it established a *prima facie* case when it introduced the certified copy of its tax roll. Tax rolls are prima facie evidence of a tax liability and establish every material fact necessary to establish a cause of action for delinquent taxes. *See* Tex. Tax Code Ann. § 33.47(a) (Vernon 2002); *Davis v. City of Austin*, 632 S.W.2d 331, 333–34 (Tex.1982). Spring Branch also contends that the failure to issue a tax bill does not affect the validity of the tax. *See* Tex. Tax Code Ann. § 31.01(g) (Vernon 2002). Although both of these contentions are true, Spring Branch ignores the Tax Code's additional requirements that appraisal records must describe the property subject to the tax with sufficient certainty to identify it and that a tax bill must identify that property.

*See* TEX. TAX CODE ANN. §§ 25.03(a), 31.01(c)(1) (Vernon 2002). We thus consider the affect of all four of these statutory sections in our analysis below.

In its second and third issues, Spring Branch contends that the property is sufficiently described when the account numbers on the appraisal records are compared to maps from HCAD. Spring Branch introduced into evidence the certified appraisal rolls and four maps of the property in question from HCAD.

To address issues one, two, and three, we first consider whether these HCAD appraisal rolls and maps described the property with the reasonable certainty required by Section 25.03(a).

■■■■ The purpose of the description in a tax bill is to designate the property in such a manner that it may be identified. *See id.* § 25.03(a); *Frossard v. State,* 497 S.W.2d 473, 475 (Tex.Civ.App.-Dallas 1973, writ ref'd n.r.e.). A tax bill must furnish within itself, or by reference to some other existing writing, the means or data by which the particular property to be taxed may be identified with reasonable certainty. *Jamison v. City of Pearland,* 489 S.W.2d 636, 641 (Tex.Civ.App.-Houston [1st Dist.] 1972, writ ref'd n.r.e.). A judgment foreclosing a tax lien, such as Spring Branch seeks here, is void if it fails to describe a definite tract of land. *Hart v. Northside Indep. Sch. Dist.,* 498 S.W.2d 459, 460–61 (Tex.Civ.App.-San Antonio 1973, writ ref'd n.r.e.).

### 1. The Appraisal Rolls

The HCAD certified appraisal rolls introduced into evidence by Spring Branch list the following account numbers and descriptions for four separate lots:

(a) 115–060–000–0009, with a property description of SADDLEWOOD ES-TATES R/P, LT 9;

(b) 118–395–001–0001, with a property description of SADDLEWOOD ES-TATES R/P, LT 1 BLK 1;

(c) 118–395–001–0002, with a property description of SADDLEWOOD ES-TATES R/P, LT 2 BLK 1;

(d) 118–395–001–0003, with a property description of SADDLEWOOD ES-TATES R/P, LT 9 BLK 1.

Spring Branch contends that Saddlewood Estates Lot 1, Block 1 and Lot 2, Block 1 are obviously the same properties as Creekview Lots 1 and 2. However, the appraisal rolls also list two separate lots as Saddlewood Lot 9 and thus appear to tax the same property twice, (a) and (d) above, in addition to misidentifying two other pieces of property, (b) and (c) above.

### 2. The Tax Bills

In 1996 and 1997, the Sieberts were initially billed for four separate accounts:

(a) Account number 115–060–000–0009, with a property description of Lot 9A, Saddlewood Estates Lts 9A & 9B.

(b) Account number 118–395–001–0001, with a property description of Lot 1, Block 1, Saddlewood Estates R/P; and

(c) Account number 118–395–001–0002, with a property description of Lot 2, Block 1, Saddlewood Estates R/P.

(d) Account number 118–395–001–0003, with a property description of Lot 9, Block 1, Saddlewood Estates R/P.

These tax bills (1) identify four pieces of property, (2) appear to bill Saddlewood Estates, Lot 9 twice, and (3) still fail to identify Creekview Lots 1 and 2. The statement for account number 118–395–001–0003 (describing Lot 9, Block 1, Saddlewood Estates R/P) was not delinquent.

### 3. The HCAD Maps

Spring Branch introduced four HCAD maps in its attempt to describe the property with reasonable certainty. Map 1 is untitled, but has the subdivision header "SADDLEWOOD ESTATES R/P" written across the area depicting the property in question. Immediately below the header is the number "118–395" in a box. The three pieces of property shown on Map 1 are labeled "0001," "0002," and "0003." The number "1" is shown in a circle above the number "0001." Spring Branch argues that by combining the number in the box, "118–395," with the number "1" in the circle, after adding two zeros before the "1," and then adding the numbers "0001," "0002," and "0003," respectively, one can conclude that the corresponding account numbers are 118–395–001–0001, 118–395–001–0002, and 118–395–001–0003.

Map 2 is also untitled and has no subdivision headers. Substantially larger than Map 1, Map 2 contains hundred of small properties. In a small area, situated in the middle, is an undivided property labeled "115–060–000–0009."

Map 3 is titled "SADDLEWOOD ESTATES LOT 9 AND CREEKVIEW LOTS 1 AND 2." No account numbers on Map 3 are complete, and none correspond with the account numbers on the tax bills. Map 3 is approximately the same size as Map 2 and labels the three subdivided properties that it depicts as Creekview Lot 1, Creekview Lot 2, and Saddlewood Estates Lot 9. The two volume and page-number references at the top of Map 3 do not correspond to any piece of property on the map.

Finally, Map 4, bearing volume number 118 and page number 395 at its top, is titled, "ASSESSOR'S BLOCK BOOK FOR HARRIS COUNTY, TEXAS, SADDLEWOOD ESTATES LOT 9 & CREEKVIEW LOTS 1 & 2 REPLAT." Map 4 contains the description, "1.9601 acres SADDLEWOOD ESTATES LOT 9 & CREEKVIEW LOTS 1 & 2 REPLAT Vol. 115 Pg. 60." Map 4 contains no account numbers.

### 4. Conclusion

In summary, the records on which Spring Branch relies initially appear to tax four pieces of property. The Sieberts had never named any properties Lots 1 and 2, Saddlewood Estates. Although Spring Branch contends that this is merely a cosmetic error, the account numbers are also unhelpful. Map 2, the only map that bears a complete account number ("115–060–000–0009"), labeled the tract that it describes as one property. This account number corresponds to Saddlewood Estates, Lot 9, the property on which the Sieberts paid taxes. Map 3 and Map 4 identify Creekview Lots 1 and 2. Map 1, the only map that identifies three Saddlewood properties, has confusing account numbers and is untitled. As a matter of law, we hold that the appraisal records do not identify the property in question with the reasonable certainty required by section 25.03(a) of the Tax Code. *See* TEX. TAX CODE ANN. § 25.03(a); *Jamison,* 489 S.W.2d at 641.

We overrule Spring Branch's first, second, and third issues.

### B. Whether the Voiding of the 1995 Re-plat Invalidated the Tax Appraisals.

In its fourth issue, Spring Branch contends that the trial court's 1998 judgment, voiding *ab initio* the 1995 replat, did not invalidate the tax appraisals. Because we have held the appraisal records do not identify the property with reasonable certainty, we need not reach this issue.

We overrule Spring Branch's fourth issue.

## C. Whether the Sieberts had to Protest the Appraisal District's Actions Administratively

■ In its fifth issue, Spring Branch contends the Sieberts were required to protest actions of the appraisal district administratively and, if so, whether the Sieberts waived their complaints about the description of the property but not doing so. Spring Branch did not raise this issue at trial or request a finding of fact or conclusion of law and, consequently, has waived this issue on appeal. TEX.R.APP. P. 33.1; *Fullick v. City of Baytown*, 820 S.W.2d 943, 946 (Tex.App.-Houston [1st Dist.] 1991, no writ); *Robles v. Robles*, 965 S.W.2d 605, 611 (Tex.App.-Houston [1st Dist.] 1998, pet. denied).

We overrule Spring Branch's fifth issue.

### Attorney's Fees

■ In its sixth through ninth issues, Spring Branch contends that (1) it is entitled to attorney's fees under Tax Code section 33.48(a)(5) in the amount of 15% of the total amount of taxes, penalties, and interest for the 1998 tax year and (2) it can impose attorney's fees in addition to an existing penalty despite section 33.07(c) of the Tax Code because Spring Branch imposed the penalty under section 33.01(a) before July 1. *See* TEX. TAX CODE ANN. §§ 33.48(a)(5), 33.01(a), 33.07(a), (c) (Vernon 2002). The Sieberts contend that Spring Branch cannot impose penalties under sections 33.01 and 33.07 and also impose an additional 15% attorney fee. We agree with the Sieberts.

### A. Imposed Penalties

Spring Branch's 1998 tax statement, sent March 10, 1999, reflected the following:

Total 1998 TAXES DUE IF PAID IN:

| | | PENALTY & INTEREST | PAY THIS AMOUNT |
|---|---|---|---|
| March | 1999 | | 8,424.78 |
| April | 1999 | 7% | 9,014.51 |
| May | 1999 | 9% | 9,183.01 |
| June | 1999 | 11% | 9,351.51 |
| July | 1999 | 16% + 15% | 11,238.65 |
| August | 1999 | 17% + 15% | 11,335.54 |

On June 30, 1999, the Sieberts tendered payment of $9,351.51, the amount shown in the March 10, 1999 statement to be due for tax, penalty, and interest if paid in June 1999. However, Spring Branch refused the tender at that time because its delinquent tax suit was pending and the tendered payment did not also include 15 % for attorney's fees. Spring Branch's position is, as its tax assessor/collector testified, that "anytime after February [1999] through the end of June [1999], [Tax Code section] 33.48 could be applicable if there is a lawsuit." The record is unclear as to whether Spring Branch ever mailed the Sieberts a tax statement that included 15% attorney's fees in addition to base tax, penalty, and interest.

However, a "Consolidated Tax Statement" prepared for litigation by Spring Branch some seven months later, on January 24, 2000, was introduced into evidence at trial. That statement showed payment due, if made in June 1999, of $10,754.24 (15% more than the $9,351.51 in base tax, penalty, and interest payable under the March 10, 2999 tax statement).

Sections 33.01 and 33.07 of the Tax Code provide for penalties on delinquent taxes:

Section 33.01. Penalties and Interest

(a) A delinquent tax incurs a penalty of six percent of the amount of the tax for the first calendar month it is delinquent plus one percent for each additional month or portion of a month the tax remains unpaid prior to July 1 of the year in which it becomes delinquent. However, a tax delinquent on July 1 incurs a total

penalty of twelve percent of the amount of the delinquent tax without regard to the number of months the tax has been delinquent. A delinquent tax continues to incur the penalty provided by this subsection as long as the tax remains unpaid, regardless of whether a judgment for the delinquent tax has been rendered.

TEX. TAX CODE ANN. §§ 33.01(a).

Section 33.07. Additional Penalty for Collection for Taxes Due Before June 1

(a) A taxing unit or appraisal district may provide, in the manner required by law for official action by the body, that taxes that become delinquent on or after February 1 of a year but not later than May 1 of that year and that remain delinquent on July 1 of the year in which they become delinquent incur an additional penalty to defray costs of collection, if the unit or district or another unit that collects taxes for the unit has contracted with an attorney pursuant to Section 6.30. The amount of the penalty may not exceed the amount of the compensation specified in the contract with the attorney to be paid in connection with the collection of the delinquent taxes.

\* \* \*

(c) If a penalty is imposed pursuant to this section, a taxing unit may not recover attorney's fees in a suit to collect delinquent taxes subject to the penalty.

TEX. TAX CODE ANN. § 33.07(a), (c).

■ Spring Branch contends that because it imposed the penalty before July 1, it was not a penalty under section 33.07(c). However, no part of either sections 33.01 or 33.07 states that a penalty to recover

attorney's fees imposed before July 1 is not a penalty under section 33.07(c). *See id.* §§ 33.01(a), 33.07(a). The sections establish the amount of penalty and the conditions under which a penalty continues but are not definitions of whether an assessment is or is not a penalty. *See id.* Spring Branch cites no authority showing why the penalty assessed is not under these sections; it argues only that, because the penalty was assessed before July 1, it is not a penalty under the sections. We hold that any penalty assessed, regardless of when, is a penalty under sections 33.01 and 33.07 of the Tax Code.

■ Once a penalty has been assessed, section 33.07(c) prohibits a taxing unit from recovering attorney's fees. *Id.* § 33.07(c); *Gano v. City of Houston,* 834 S.W.2d 585, 587 (Tex.App.-Houston [14th Dist.] 1992, writ denied); *Uvalde County Appraisal Dist. v. Parker,* 733 S.W.2d 609, 611 (Tex.App.-San Antonio 1987, writ ref'd n.r.e.); *Galveston Indep. Sch. Dist. v. Heartland Fed. Sav. & Loan Ass'n,* 159 B.R. 198, 206 (S.D.Tex.1993). Spring Branch cites no authority that allows penalties under sections 33.01 and 33.07 and also attorney's fees under section 33.48. We hold that once a penalty has been assessed under sections 33.01 or 33.07, the Tax Code prohibits a taxing unit from recovering attorney's fees under section 33.48.

We overrule Spring Branch's sixth through ninth issues.

### Involuntary Dismissal

■ In its tenth issue, Spring Branch contends that the trial court was not authorized to dismiss the 1996 and 1997 tax year claims involuntarily after trial. Spring Branch did not raise this issue at trial and, consequently, has waived it on appeal. TEX.R.APP. P. 33.1; *McCain v.*

*NME Hosps., Inc.,* 856 S.W.2d 751, 755 (Tex.App.-Dallas 1993, no writ) (holding that failure to raise issue of dismissed case at trial preserves nothing for appeal).

### Conclusion

We affirm the judgment of the trial court.

Former Chief Justice SCHNEIDER, who retired from the Court before this opinion's issuance, not participating.